SANGER vs. MELLON.

*March 8 — March 24, 1881.*

(1) *Judgment as Evidence.*   (2) *Payment without mistake of fact.*

1. In a litigation between A. and B., A. cannot set up against B. a judgment or decree in a cause to which B. was not a party nor in any way a privy with any of the parties.
2. S., an officer who had sold property under process in his hands, paid to M., another officer, the amount of a valid execution in M.'s hands against the same debtor; and M. paid over the money to the plaintiff in his execution. Such payment by S. was made without any mistake of fact. *Held*, that he could not recover back the amount from M. by showing that, in a subsequent suit, to which M. was not a party, he (S.) had been compelled to pay, to the assignee in bankruptcy of said judgment debtor, the sum so paid to M.

APPEAL from the County Court of *Milwaukee* County.

Prior to and on September 26, 1877, *Sanger*, as sheriff, by his deputy, Van Vechten, and by virtue of sundry attachments issuing out of the state courts, seized a stock of goods and fixtures belonging to the Groskopfs; and after such seizure, but prior to September 29, 1877, he also, by virtue of an execution for $438.05, damages, interest and costs, in favor of Roehring, issued out of said state court, seized the same goods subject to the attachments, the aggregrate amount of said attachments and executions being about $1,500. Thereupon Van Vechten put all the goods so seized in charge of a custodian. September 29, 1877, a judgment was recovered before

Sanger vs. Mellon.

a justice of the peace in favor of Eisen and against the Groskopfs, and on the same day an execution thereon was issued to *Mellon*, as constable, who, as such, levied upon the goods and fixtures so held by Van Vechten's custodian, subject, however, to the previous liens of the sheriff. This levy was indorsed on *Mellon's* execution September 29, 1877, at 11 o'clock A. M., but the goods and fixtures remained in the possession of the custodian, who, under an order to the sheriff from the state court, sold a portion of the property, which was perishable. On the afternoon of September 29, 1877, the Groskopfs filed their petition in bankruptcy, and thereupon were adjudged bankrupts. The sales by the sheriff and *Mellon* were adjourned, from time to time, until October 19, 1877, when those officers were restrained by the bankrupt court from selling or disposing of any property levied on by virtue of the executions in favor of Roehring, Levi and Eisen, respectively. November 12, 1877, this injunctional order was modified so as to permit Van Vechten, as under-sheriff, and *Mellon*, as constable, to proceed and sell the property levied upon by them respectively; but was continued in force to the extent of not permitting *Sanger* to pay over to Roehring any of the proceeds of such sales until the further order of the court. November 13, 1877, Van Vechten sold until the proceeds amounted to $513.38, which, with what he had received from the sales made by the custodian, was sufficient to pay the balance of the executions in his hands as under-sheriff; and thereupon Van Vechten, by an agreement with *Mellon*, sold enough more of said property to raise $171.09, being the amount then due on *Mellon's* execution, including costs, and paid over the whole of the proceeds of such sales to *Sanger*, who, November 16, 1877, gave his check to *Mellon* for $171.09, as he was permitted to do by the order in bankruptcy referred to. On the same day *Mellon* returned the execution satisfied in full, and that the money had been paid into court. It seems to have been conceded on the argument that the

attorneys for Eisen received the money, and, after deducting charges, remitted the same to their client, who was a non-resident.

This action was brought by *Sanger* against *Mellon* to recover back the amount of the check given as above stated. On the trial, there was offered in evidence on the part of *Sanger*, among other things, the record of a suit wherein Nowell, as assignee of the Groskopfs in bankruptcy, filed a bill in equity in the circuit court of the United States for the eastern district of Wisconsin, against *Sanger*, as such sheriff, and Roehring, the creditor in the execution held by *Sanger*. The bill set up the facts as to such seizures, the attachments above referred to, facts tending to show the invalidity of the Roehring judgment and execution as against the attaching creditors represented by Nowell, and said sale by *Sanger;* and it prayed that the Roehring judgment should be set aside, and that *Sanger* should pay over to such assignee all moneys realized on such sales. Roehring answered, justifying his judgment, execution, levy and sale, and claiming priority to the attachments which were dissolved by the bankruptcy proceedings, and to the rights under which Nowell, as assignee, had succeeded. *Sanger* allowed the bill to be taken as confessed, as against him, and the case was argued in the United States circuit court upon the bill, answer, and an agreed statement of facts. From this statement it appeared, and the court therefore found, that *Sanger* had realized in cash $1,308.99, and had turned over to the assignee property valued at $535, making $1,843.99; that he had incurred costs and expenses to the sum of $573 — leaving for the prior attachments represented by the assignee $1,270.99, which amount was $12.64 less than the amount of the attachments; that, of the expenses so incurred, $286.58 was incurred after the injunctions had issued, and hence should have been deducted from his total fees and expenses, and, being so deducted, left $286.42 to be deducted from said sum of $1,843.99; and that, this deduction being made, there was left

$273.94 over and above the prior attachments, to be applied upon the Roehring judgment. It was thereupon ordered, adjudged and decreed in said equity suit that *Sanger*, out of said moneys and property so seized by him, after deducting therefrom $573, pay to the assignee in bankruptcy $462.05, and pay Roehring $273.94, and that each party pay his own costs. This record was admitted in evidence on the trial of this case, against the objection of *Mellon*.

There was a verdict for the plaintiff; a new trial was refused; and defendant appealed from a judgment on the verdict.

For the appellant there were briefs by *Stark & Brand*, and oral argument by *W. C. Williams*.

*J. C. McKenney*, for the respondent.

CASSODAY, J.   From the facts stated, we are very clearly of the opinion that it was error for the trial court to admit in evidence the record and decree of the United States court in the suit brought by Nowell, assignee, against *Sanger* and Roehring, for the simple reason that neither *Mellon*, nor any one whom he represented, was a party to that record or decree. This has frequently been determined by this court, and does not require comment. *Schettler v. Brunette*, 7 Wis., 197; *Adams v. Filer*, 7 Wis., 306; *Saveland v. Green*, 36 Wis., 612.

It does not appear to us that the check was given under any mistake of fact. *Sanger*, as well as *Mellon*, knew that the bankrupt court had removed the injunction first obtained, so far as to allow *Mellon* to proceed and make the amount of his execution out of the property of the bankrupts; and the bankrupt court thereby, impliedly, if not expressly, authorized *Mellon* to take, sell and dispose of enough of the property to satisfy his execution, and in effect directed *Sanger* to allow him to do so. The mere fact that Van Vechten, under *Mellon's* directions, made the sale and paid the proceeds over to *Sanger*, who paid the same to *Mellon*, or whether *Mellon's*

levy was good as to third parties, can make no substantial difference. Had *Sanger* set up the facts by way of answer in the Nowell suit, and proved them upon the hearing, it is probable that the decree in equity would have protected him in what he had so done in pursuance of the order of the court of bankruptcy. The failure to make such answer and proof is the only mistake of fact which we are able to discover. For that, we do not think *Mellon*, who had no interest in the matter except as an officer, should be held responsible, especially after he had parted with the money under the apparent sanction of the bankrupt court. The parties all seem to have acted in good faith. The sheriff and his deputy undoubtedly performed their duties as they understood them, and it would seem to be a misfortune that they were not protected; but we are unable to discover why *Mr. Mellon*, who apparently did his duty, should be made responsible therefor.

*By the Court.*— The judgment of the county court is reversed, and the cause is remanded for a new trial.