STATE of Wisconsin, Plaintiff-Appellant and
Cross-Respondent,

v.

FONK'S MOBILE HOME PARK & SALES, INC.,
Defendant-Respondent and Cross-Appellant.†

Court of Appeals

*No. 82–2319. Submitted on briefs November 2, 1983.—
Decided December 27, 1983.*
(Also reported in 343 N.W.2d 820.)

† Petition to review denied.

For the plaintiff-appellant and cross-respondent, the cause was submitted on the briefs and a supplemental brief of *Bronson C. La Follette,* attorney general, and *Jonathan P. Siner,* assistant attorney general.

For the defendant-respondent and cross-appellant, the cause was submitted on the briefs and a supplemental brief of *Garth R. Seehawer* of *Foley, Foley & Seehawer, S.C.,* of Racine.

Before Scott, C.J., Brown, P.J., and Robert W. Hansen, Reserve Judge.

BROWN, P.J. This is an action by the state alleging that Fonk's Mobile Home Park & Sales, Inc., placed unreasonable contractual restrictions on owners residing in its park. It maintained that the only way the owners could sell their mobile homes was through Fonk's—at a great monetary loss to the owners but at a great profit to Fonk's. The trial court dismissed the case, concluding that Fonk's had discontinued using the restriction so no threat of future harm, a necessary element of proof in injunction actions, could be shown. We reverse because threat of future harm need only be alleged and proven in common law actions for injunctions. It is not necessary where the authority for the injunction is found in a statute which does not make threat of future harm a prerequisite to relief. Other issues raised will also be discussed.[1]

Fonk's is a mobile home park operator; it rents sites to mobile home park owners who then place their homes on the leased plats. From January 1, 1977 to May 21, 1981, the lease agreement used by Fonk's contained a provision that required the owner to either sell his or her mobile home to Fonk's or, if the mobile home was sold to a third person, to remove it immediately from Fonk's park.[2] In

---

[1] This case was certified to the supreme court on September 15, 1983. The supreme court declined to take the case on October 11, 1983. After supplemental briefing by the parties, the case was taken under submission on December 15, 1983.

[2] According to the state's pleadings, Fonk's used a lease form from January 1, 1977 to May 21, 1981 that contained the following provision:

*Transfer of Mobile Home.*

Lessee agrees that this lease is for the purpose of parking only the mobile home hereinabove described, and should lessee sell, exchange, or transfer title to the above mobile home or purchase a different mobile home, this lease may be cancelled and terminated and in all respects be null and void and the tenancy terminated at lessor's option. The Lessee, upon termination of this lease and/or his tenancy, shall immediately remove said mobile

July of 1982, the state brought an action against Fonk's alleging that this provision was an "unreasonable restriction" in violation of Wis. Adm. Code, sec. Ag 125.07(1).[3] This section of the Administrative Code establishes regulations for mobile home parks and, among other things, prohibits mobile home park operators from placing any unreasonable restrictions on the sale of a mobile home by its owner. The state sought an injunction against Fonk's and pecuniary relief under sec. 100.20(6), Stats.[4] The state alleged that the effect of this contract clause was to give Fonk's a *monopoly* on the sale of mobile homes in its park. The contract required an owner to sell his mobile home to Fonk's or remove it from the premises. Removing the mobile home from the premises was not an economical alternative because of the high cost of moving mobile homes. Also, the shortage of mobile home sites in

home from the park. If agreeable between Lessor and Lessee, the Lessor will purchase mobile home from the Lessee, or Lessee may sell his own mobile home with the understanding that mobile home must be removed from the park.

[3] Wis. Adm. Code, sec. Ag 125.07(1) states:

Sale of mobile home; transfer of tenancy. (1) No tenant shall be required to designate the operator, or any person named by the operator, as agent for the sale of a tenant's mobile home; nor shall any other unreasonable restriction be imposed by the operator on the sale of a tenant's mobile home by the tenant or an agent of the tenant's own choosing.

[4] Section 100.20(6), Stats., provides:

The department may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction the violation of any order issued under this section. The court may in its discretion, prior to entry of final judgment make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court. The department may use its authority in ss. 93.14 and 93.15 to investigate violations of any order issued under this section.

the area made it difficult to sell a mobile home without a lot to put it on.

The pleadings alleged that owners did sell their mobile homes to Fonk's at prices far below market value because there was no viable alternative. Fonk's then resold the dwellings at an increased price. This practice was allegedly proof that the clause was an unreasonable restriction.

The state filed two complaints in this case. The trial court dismissed both *in toto*. The trial court reasoned that injunctive relief is generally regarded as preventative in nature and requires a threat of future wrongdoing. Because the first complaint made no allegation regarding a threat of future wrongdoing, it was dismissed. An amended complaint alleged that *past* violations by Fonk's showed the threat of future wrongdoing. The state, however, acknowledged that Fonk's had removed the allegedly illegal provision from its standard contract; therefore, the trial court concluded that the allegations would "not reasonably support an inference of threat of recurrence of violation by the defendant." It then dismissed the amended complaint for failing to incorporate all of the prerequisites necessary prior to filing a claim for injunctive relief.[5] The main focus of this decision is whether a threat of future harm must be alleged and proven in order to obtain an injunction under sec. 100.20(6), Stats.

Section 100.20, Stats., was enacted to regulate unfair trade practices and unfair methods of competition in

---

[5] The trial court reached other issues, rejecting Fonk's arguments that Wis. Adm. Code, sec. Ag 125.07 is not a general order, that the code section is unconstitutional and that the state must plead irreparable injury and inadequacy of adequate remedy at law to state a cause of action for injunctive relief. It also held that a determination as to whether the alleged conduct was an unreasonable restriction was not ripe at the motion to dismiss stage.

business.  State regulation of business practices is justified on the grounds that unscrupulous tactics contribute to social unrest in poverty areas, cause financial distress to consumers and deprive honest businessmen of legitimate profits.  Jeffries, *Protection for Consumers Against Unfair and Deceptive Business*, 57 Marq. L. Rev. 559, 559 (1974).  The Department of Agriculture has the authority to establish regulations defining unfair business practices in a variety of areas.  Wisconsin Administrative Code, ch. Ag 125 establishes the regulations applicable to mobile home parks and contains an express statement of administrative policy.  Section Ag 125.01 recognizes that a shortage of rental sites has placed park owners in a dominant market position and impairs the bargaining position of mobile home owners.  Exploiting the weak bargaining position of the mobile home owners may constitute unfair competition or unfair trade practices in violation of sec. 100.20.  The state has an interest in protecting consumers deemed to be in an unfavorable bargaining position and in preventing future exploitation of other consumers.

Fonk's claims that the common law requirements for an injunction must be met regardless of its statutory origin.  In *State v. P. Lorillard Co.*, 181 Wis. 347, 193 N.W. 613 (1923), the defendant allegedly violated a statute prohibiting certain business combinations in restraint of trade.  The statute at issue in *Lorillard* gave the state the authority to enforce the statute and to assess a forfeiture against violators.  In *Lorillard,* the state also sought to enjoin the defendant's business practices.  The court ruled that an injunction could not be issued because the state had not alleged a threat of future wrongdoing. *Id.* at 375–76, 193 N.W. at 623–24.  *Lorillard* is distinguishable from this case, however.  The statute enforced in *Lorillard* provided for injunctive relief as follows:

*Injunction; Pleadings; Practice.*

Section 1747f. The several circuit courts may prevent or restrain, by injunction or otherwise, the formation of any such contract or combination or the execution of the purposes thereof. The several district attorneys shall, upon the advice of the attorney-general, who may appear as counsel in any such case, institute such actions or proceedings as he shall deem necessary *to prevent or restrain a violation* of the provisions of the preceding section, which shall be begun by way of information or complaint as in ordinary actions, setting forth the cause and grounds for the intervention of the court and praying that such violation, *whether intended or continuing,* shall be enjoined or otherwise prohibited. . . . [Emphasis added.]

Sec. 1747f, Stats. (1921).

It is the emphasized language in the above passage which differentiates *Lorillard* from the present situation. The *Lorillard* court found that:

An examination of the complaint will show that it contains no averments that the defendants *are continuing* the alleged unlawful combination, *or* that they *threaten to continue* it in the future.

. . . .

We regard the rule as so well settled that injunctive relief *of the kind here sought* cannot be given in the absence of such allegations . . . .

*Lorillard* at 375–76, 193 N.W. at 623–24. (Emphasis added.) Close scrutiny of the *Lorillard* decision indicates that the court was construing the prayer for injunctive relief in light of the statutory directive calling for a need to show future harm or threat of future harm. Because sec. 100.20(6), Stats., does not contain a similar restriction, *Lorillard* does not prohibit an injunctive remedy in this case. The statute at issue here specifically provides the court with the authority to issue an injunction if an order has been violated.

Section 100.20 (6), Stats., establishes the requirements for issuing an injunction. It does not require threat of future harm. The first sentence of sec. 100.26 (6) indicates the legislative intent that *past* violations are the gravamen of the injunctive action. "The department may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction the violation of any order issued under this section."[6]

In two recent cases, the supreme court has enumerated the requirements for the issuance of a statutory injunction. *Pure Milk Products Cooperative v. National Farmers Organization*, 90 Wis. 2d 781, 280 N.W.2d 691 (1979), addressed injunctive relief based on sec. 185.43 (2), Stats., regulating competitive practices among cooperatives. The court held that an injunction may be issued under sec. 185.43 (2) upon a showing that a cooperative has a contract with a member or members, that the defendant had actual or constructive notice of that contract and that the defendant has induced or attempted to induce a member to breach his or her contract. *Id.* at 789, 280 N.W.2d at 695. "It is not necessary for the cooperative to prove that there is malicious intent, that the injunction is necessary to prevent irreparable injury, or that the benefits flowing from the injunction will outweigh the harm the injunction will cause." *Id.* at 789–90, 280 N.W.2d at 695. Thus, common law prerequisites are not a necessity to successful pleading of an action under sec. 185.43. There is no language in the opinion to indicate that future in-

---

[6] The fact that a statutory injunction can be issued upon proof of past violation is supported by the verb tenses used by the court and the legislature. In *Pure Milk Products Cooperative v. National Farmers Organization*, 90 Wis. 2d 781, 789–90, 280 N.W.2d 691, 695 (1979), the court establishes the elements for a statutory injunction, and all of the verb tenses are either in the present or past. The statute in question in that case, sec. 185.43(2), Stats., is also written in the present and past tenses, as is the statute at issue here.

jury must be shown. Rather, the court recognized the legislative policy to protect and encourage cooperatives and held that sec. 185.43 (2) offers broad protection without restricting legitimate competition. In a separate section of the opinion, the court in *Pure Milk* made a completely independent analysis of whether an injunction could be issued under common law tort principles if, for some reason, a statutory injunction could not be obtained. *Id.* at 796, 280 N.W.2d at 698. In this separate section, threat of future harm was held to be a necessary ingredient to common law recovery. *Id.* at 800, 280 N.W.2d at 700. Fonk's attempts to downplay the significance of *Pure Milk* by taking language from the common law injunction part of the opinion and arguing that it applies to all injunctions, common law or statutory. We do not agree with Fonk's reading of the case.

In *State v. Excel Management Services, Inc.*, 111 Wis. 2d 479, 331 N.W.2d 312 (1983), the supreme court upheld a claim for a permanent injunction under sec. 100.-20 (6), Stats., upon the past violations alleged in the complaint.[7] The complaint alleged that certain defendants had used "bait and switch" tactics in obtaining sales, had misrepresented the identity of the sales staff, the manufacturer of the product and the extent of the product's warranty. It also alleged that the defendant bank had actual notice of several violations and deceptive practices. *Id.* at 483–84, 331 N.W.2d at 314–15. There were no allegations of future harm or the threat of future wrongdoing. Nevertheless, the court found that "the complaint clearly sets out the facts necessary to show violations of the statutes involved in this action." *Id.* at 490, 331 N.W.2d at 317.

Fonk's attempts to distinguish *Excel Management* by pointing out that although the violation involved past in-

---

[7] The issue on appeal was whether an assignee of various contracts was properly joined as a defendant.

cidents, those incidents produced contracts and mortgages which were being and would continue to be enforced by the assignee the state sought to enjoin. This, of course, has no bearing on whether the threat of future harm must be alleged in the complaint. Moreover, the injunctive relief sought in *Excel Management* was not limited to the assignee but rather included the business which had entered into the contracts in the first place. Thus, Fonk's attempt to distinguish *Excel Management* fails.

The *Excel Management* policy analysis of sec. 100.20, Stats., is important to our interpretation here. Basing an injunction on past violations of consumer protection statutes furthers the policy supporting the statute. In these cases, the injunction serves as notice to the world that the defendant has violated the statute and must cease and desist its deceptive practices. In this way, injunctive relief reflects legislative awareness of the fact that traditional public and private remedies are often of little value in deterring consumer fraud. Under the statute, the injunction is tied with restitution in order to assure that the merchant is deprived of the illegal fruits of past practices and to deter future illegal conduct by eliminating the merchant's expectation of profit from such activities. 57 Marq. L. Rev. at 599. In *Excel Management*, the court noted that it is clear from the statute that the "legislature intended to provide remedies for those persons who had been damaged as the result of fraudulent and deceptive trade practices . . . [and] that the trial court should not limit itself only to giving injunctive relief . . . ." *Id.* at 488, 331 N.W.2d at 316.

If sec. 100.20 (6), Stats., required a threat of future harm before an injunction could be ordered, it would be difficult, if not impossible, to get an injunction under this statute. Any time a complaint was issued, the defendant could avoid an injunction and restitution to de-

frauded consumers simply by stopping the practice which was the subject of the complaint. Because there would be no threat of future harm, there could be no injunction and, as importantly, no "class action" type of restitution. The effect of this interpretation would be to deprive consumers of relief because it might not be economically feasible to pursue many individual claims for damages on a case-by-case basis. This result would be clearly inconsistent with legislative policy. On the other hand, if restitution is available upon a showing of a past violation and monetary loss, defrauded consumers would be encouraged to report violations and submit claims regardless of the amount of loss. The trial court would avoid the burden of many individual suits. We conclude it would violate public policy to interpret this statute to require a threat of future harm in order to obtain an injunction.

A second issue is whether Wis. Adm. Code, ch. Ag 125 is an order or a rule. Fonk's contends that ch. Ag 125 is a "rule" rather than an "order" and that sec. 100.20 (6), Stats., applies only to "orders." Fonk's cites the definition of a rule, the department's rule-making authority and the wording of sec. 100.20 (6) in support of this proposition.

The last sentence of Wis. Adm. Code, sec. Ag 125.01 reads: "These and other acts or practices by mobile home park operators constitute unfair methods of competition and unfair trade practices in business, and are prohibited under s. 100.20, Stats." Section 100.20 prohibits violation of an "order," and the Department of Agriculture has established that the practices in ch. Ag 125 are prohibited by sec. 100.20. It follows that the intent of the department was to create an "order." To find otherwise would frustrate the consumer protection purpose of the chapter. We affirm the trial court's decision on this issue.

The third issue is whether the term "unreasonable restriction" as written in Wis. Adm. Code, sec. Ag 125.07 (1) is unconstitutionally vague. The basic consideration in examining a term for vagueness is whether it gives sufficient notice of the law to potential defendants. The trial court found the alleged unreasonable restriction within the scope of sec. Ag 125.07. We agree.

Wisconsin Administrative Code, ch. Ag 125 must be read as a whole to determine unreasonable practices. Section Ag 125.01 contains a declaration of policy which provides in part:

Park entry requirements, coupled with the shortage of mobile home sites, have further limited the possibilities for relocating mobile homes between parks, *thereby subjecting tenants to the threat of serious financial loss unless permission is granted to sell their mobile homes in place. This has made tenants susceptible to the threat of arbitrary eviction, and further encouraged the imposition of arbitrary terms and charges, including terms and charges not disclosed at the outset of tenancy.* These and other acts or practices by mobile home park operators constitute unfair methods of competition and unfair trade practices in business, and are prohibited under s. 100.20, Stats. [Emphasis added.]

This statement, together with the provisions of sec. Ag 125.07, provides sufficient notice of what constitutes unreasonable restrictions. The renegade clause once found in Fonk's contract is alleged to be exactly what is prohibited. The practices complained of by the state in this case fall within the scope of sec. Ag 125.07.

*By the Court.*—Order reversed and remanded for further proceedings.