STATE of Wisconsin, Plaintiff-Respondent,
v.

FONK'S MOBILE HOME PARK AND SALES,
INC., Defendant-Appellant.†

Court of Appeals

*No. 85-1625. Submitted on briefs July 19, 1986.—Decided
September 3, 1986.*

(Also reported in 395 N.W.2d 786.)

† Petition to review pending. This petition was not decided at
the time the volume went to press. Its disposition will be reported in a
later volume.

288

For the defendant-appellant, the cause was submitted on the briefs of *Robert A. Smith*, of *Schroeder, Riester, Melin & Smith, S.C.*, of Milwaukee and *Garth R. Seehawer*, of *Foley, Foley, Seehawer & Wyant, S.C.* of Racine.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *Pamela Magee-Heilprin*, assistant attorney general and *William C. Wolford*, assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   This appeal arises from an unfair trade practices-unfair competition action brought by the state against Fonk's Mobile Home Park and Sales, Inc., pursuant to sec. 100.20(6), Stats.[1] Following a trial to

---

[1] Section 100.20, Stats., prohibits, and establishes methods of enforcing the prohibition of, unfair methods of competition and unfair trade practices in business. Subsection (6) provides:

> The department [of agriculture, trade and consumer protection] may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction the violation of any order issued under this section. The court may in its discretion, prior to entry of final judgment make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court. The

the court,[2] the circuit court concluded that Fonk's unreasonably restricted its tenants' selling of mobile homes to purchasers other than Fonk's itself, in violation of Wis. Adm. Code, sec. Ag 125.07(1).[3] The court granted a permanent injunction and ordered Fonk's to make restitution to all Wisconsin residents who suffered pecuniary loss due to the violation.

Fonk's contends on appeal that the state failed to meet its burden of proof in establishing the alleged violation and that the trial court's finding of violation was premised on improperly admitted answers to interrogatories and testimony by witnesses rendered incompetent by the "Dead Man's Statute." Fonk's also argues that the proof at trial and the finding of violation abandoned the theory of the case presented by the pleadings, rendering the final determination arbitrary and unjust.

---

department may use its authority in ss. 93.14 and 93.15 to investigate violations of any order issued under this section.

[2] The circuit court originally dismissed the complaint, believing the threat of future harm to be a necessary element of the statutory injunction action. We reversed and remanded, holding that threat of future harm need not be alleged or proved where the authority for the injunction is found in a statute which does not make threat of future harm a prerequisite to relief. *See State v. Fonk's Mobile Home Park & Sales, Inc.*, 117 Wis.2d 94, 343 N.W.2d 820 (Ct. App. 1983).

[3] Wisconsin Administrative Code, sec. Ag 125.07(1), provides:

No tenant shall be required to designate the operator, or any person named by the operator, as agent for the sale of a tenant's mobile home; nor shall any other unreasonable restriction be imposed by the operator on the sale of a tenant's mobile home by the tenant or an agent of the tenant's own choosing.

A tenant is any person renting a mobile home site from an operator; an operator is any person engaged in the business of renting sites in a mobile home park to tenants. Wis. Adm. Code, sec. Ag 125.02(5) and (6).

Lastly, Fonk's objects to the scope of the order for injunctive relief and restitution. We affirm on all grounds.

At the time referred to in the complaint, Fonk's owned and operated two mobile home parks in Racine county.[4] Mobile home owners rented sites in the parks on which to place their homes. The amended complaint alleged that from at least January 1, 1977 until May 21, 1981, Fonk's required its tenants to sign a lease containing the following language, or language substantially similar:

*Transfer of a mobile home*

Lessee agrees that this lease is for the purpose of parking only the mobile home hereinabove described, and should lessee sell, exchange or transfer title to the above mobile home or purchase a different mobile home, this lease may be cancelled and terminated and in all respects be null and void and the tenancy terminated at lessor's option. The Lessee, upon termination of this lease and/or his tenancy, shall immediately remove said mobile home from the park. If agreeable between Lessor and Lessee, the Lessor will purchase mobile home from the Lessee, or Lessee may sell his own mobile home with the understanding that mobile home must be removed from the park.

The state alleged that because of a shortage of available mobile home sites in the area it is difficult to

---

[4] According to the testimony of Richard C. Fonk (Fonk, Jr.), the mobile home parks are now owned by the Richard J. Fonk Trust and Dover Properties, Limited. Fonk's Mobile Home Park and Sales buys and sells mobile homes. Fonk, Jr. is manager and vice president of Fonk's and president of Dover Properties, as well as being one of the beneficiaries of the Richard J. Fonk Trust.

sell a mobile home without a site to accompany it. The alleged effect of the quoted lease clause was to force many owners to sell their homes to Fonk's at prices substantially below those they would have received if the homes were sold in place to outside purchasers. The state claimed Fonk's would then resell the homes, often on the same lots and without making substantial improvements, at significantly higher prices than it had paid to the prior owners.

As of May 21, 1981, Fonk's revised its lease, eliminating the clause in question.

The state presented fourteen witnesses at trial, former Fonk's tenants who testified about selling their mobile homes. Some said they had offers from outside purchasers which fell through when they, the witneses, were informed by Fonk's that they would have to remove their homes from the park in the event of such sales. Others did not try to sell on their own, knowing from the lease clause or having been told by Fonk's that they would have to remove the homes if they did. Two said they knew it was not possible to sell on their own. One said that when she inquired about selling on her own, Richard Fonk, Sr. laughed at her.

One of these witnesses sold her mobile home to a third party through Fonk's, on consignment, and another sold his home privately and had it moved from the park. The rest sold directly to Fonk's, several testifying they felt they had no choice. Fonk's, in turn, sold the homes, in most cases allowing them to remain on the same lots.

Fonk's presented witnesses, present and former tenants, who were satisfied with their dealings with Fonk's and had sold their homes to third parties, or had purchased homes from tenants, without difficulties.

Employees of Fonk's testified regarding the time and expenses incurred in cleaning and refurbishing mobile homes for resale. Fonk's also claimed there were valid reasons to require mobile homes to be moved to different areas of the parks or out of the parks altogether because of age, size or condition of the homes.

We turn first to the issues relating to the admission of certain evidence and testimony.

Fonk's contends the trial court erred in admitting and considering as evidence certain of Fonk's answers to interrogatories because the interrogatory questions were not made part of the record. The exhibits consisted of documents such as leases, purchase contracts and records of expenditures, accompanied by cover sheets containing additional information.

Fonk's did not object to the admission of these exhibits at trial; the objection was therefore wavied. *See* sec. 901.03, Stats. Moreover, we fail to see any prejudice resulting from their admission. Many of the documents were self-explanatory and it is not contended that any of the documents were not what they appeared to be. Furthermore, Richard C. Fonk's deposition testimony, admitted by stipulation, referred in detail to and explained the contents of several of the same exhibits introduced at trial, including the cover sheets. We reject Fonk's argument that the exhibits were so worthless as evidence that the trial court could not properly rely on them in the fact-finding process.

Fonk's argues next that the so-called "Dead Man's Statute" rendered each of the state's witnesses incompetent to testify as to conversations and transactions with Richard J. Fonk (Fonk, Sr.). Fonk, Sr. managed Fonk's until his death in September 1978, after which time

Fonk, Jr. and Dorothy Fonk (Fonk, Sr.'s widow) shared management responsibilities. Over the objection of Fonk's, the trial court allowed several of the state's witnesses to testify concerning their dealings and conversations with Fonk, Sr.

George Brixius stated that Fonk, Sr. told him he could sell his home to a third party but would have to move it out of the park. Clifford Hetchler stated that he discussed the sale of his home with Fonk, Sr. and felt he had no choice but to accept Fonk's offer to pay off the mortgage. June Rogers testified that she asked Fonk, Sr. to make an offer on her home and that when she inquired about selling it on her own he laughed at her. Michael Hultman testified that he went to Fonk's to sell his home and was not satisfied with Fonk, Sr.'s offer but that Fonk, Sr. told him he would refuse to allow the home to remain in the park if sold privately. Robert Ketterhagen stated that when he inquired about selling his home on his own, Fonk, Sr. said "absolutely not" and that if he sold to a third party the home would have to be moved out of the park. Jane McGinnis testified that she knew it was impossible to make a private sale, so she sold to Fonk, Sr. Margaret Welch testified that she tried to purchase a home directly from a Fonk's tenant but Fonk, Sr. refused to allow her to do so unless she moved the home off the lot; she later purchased a home directly from Fonk's.[5]

---

[5] Fonk's claims that another witness, Alvin Halbur, insisted that he dealt with Fonk, Sr., who told him he would have to move his home off the lot if he sold it directly. This alleged discussion and the sale of Halbur's home to Fonk's took place in 1979, after Fonk, Sr.'s death. The trial court evidently believed Halbur did have the described conversation, but with Richard Fonk, Jr. The credibility of witnesses is a matter for the trial court, acting as finder of fact.

The Dead Man's Statute, sec. 885.16, Stats., provides in relevant part:

> No party or person in his own behalf or interest, and no person from, through or under whom a party derives his interest or title, shall be examined as a witness in respect to any transaction or communication by him personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his title or sustains his liability to the cause of action from, through or under such deceased or insane person . . . unless such opposite party shall first, in his own behalf, introduce testimony of himself or some other person concerning such transaction or communication . . . .

Section 885.17, Stats., is a companion statute, relating to testimony regarding transactions or communications with deceased or insane agents.

█

The application of the Dead Man's Statute constitutes a question of law which we consider without deference to the decision of the circuit court. *See Hainz v. Shopko Stores, Inc.*, 121 Wis.2d 168, 172, 359 N.W.2d 397, 400 (Ct. App. 1984).

The Dead Man's Statute is the object of considerable criticism in this state and nationwide. Our supreme court stated in *Estate of Molay*, 46 Wis.2d 450, 458–59, 175 N.W.2d 254, 259 (1970):

---

*Cogswell v. Robertshaw Controls Co.*, 87 Wis.2d 243, 250, 274 N.W.2d 647, 650 (1979). If more than one reasonable inference may be drawn, we must accept the one chosen by the trial court. *C.R. v. American Standard Insurance Co.*, 113 Wis.2d 12, 15, 334 N.W.2d 121, 123 (Ct. App. 1983). We reject Fonk's contention that Halbur's testimony is totally incredible as a matter of law.

This court has frequently expressed its feeling that this statute rests upon an archaic view of the law—the view that one who has an interest in a controversy should not be allowed to testify. While the statute is occasionally, though rarely with any degree of sincerity, defended on the ground that it would be unfair to permit a survivor to give his version of a transaction when the other party's mouth is stopped in death, the more realistic position, and one which constitutes the underpinning of the decisions of this court, was stated in 1948 by George R. Currie, later Chief Justice of Wisconsin, in *Transactions with Deceased Persons*, 1948 Wisconsin Law Review 491, 505, quoting from 1 Wigmore, *Evidence* (3d ed.), p. 696, sec. 578:

> " 'Are not the estates of living men endangered daily by the present rule which bars from proof so many honest claims? Can it be more important to save deadmen's estates from false claims, than to save living men's estates from loss by lack of proof?' "

Because of the evident lack of rational basis for the statute (2 Wigmore, *Evidence* (3d ed.), pages 67–729, secs. 575–587, especially sec. 578, page 695; McCormick, *Evidence* (hornbook series), page 142, sec. 65), courts unabashedly take the position that its effect should be limited wherever possible and they urge its repeal. McCormick, *supra*, page 143, points out that commentators as far back as Jeremy Bentham (1748–1832) considered the rule of refusing to listen to the testimony of a survivor to a transaction with a deceased person to be "blind and brainless." Were the rule simply one of common law its pernicious effect would long ago have dictated its abolition. Since it is a rule of statutory law, the courts

have merely been able to alleviate the harshness of the rule by insisting upon exceptionally strict rules for its invocation.

Reading the statute strictly, we conclude that it did not bar the testimony in issue.

First, in the present case, the witnesses who testified as to conversations and transactions with Fonk, Sr. were not parties to the action; the action was brought by the state.

■

Nor do we consider the witnesses to have been testifying in their own behalf or interest, as that phrase has been judicially interpreted. The test of the disqualifying interest of the witness is whether he or she will gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. *Estate of Christen,* 72 Wis.2d 8, 12, 239 N.W.2d 528, 530 (1976). The interest must be present, certain and vested, and "not an interest uncertain, remote, or contingent." *Id.* (quoting *Estate of Novak,* 181 Wis. 16, 18, 193 N.W. 1000, 1000 (1923)).

The direct operation and effect of the judgment in this case does not result in gain or loss to any of the witnesses who testified. Though the order for judgment requires Fonk's to make restitution to all Wisconsin residents who suffered pecuniary loss as a result of the violations, such restitution can only be obtained if a witness or other affected person makes a claim to a special master or magistrate, who will "determine if a violation occurred as to that tenant and, if so, the pecuniary loss which accrued from said violation." These are facts not determined by the trial court here. The trial court's findings of fact and conclusions of law contained

no express findings that any or each of the individual transactions between Fonk, Sr. and individual witnesses constituted violations in themselves, nor were specific damages found.

The trial court's decision does not preclude a finding by the special master or magistrate that as to any individual witness here no violation occurred or no pecuniary loss resulted. It is for each tenant to satisfy the fact finder that as to him or her a violation actually occurred. The restitution interest of these witnesses is at best contingent.

Neither will the record in this case "be legal evidence" for these witnesses in the restitution proceedings or any private action brought against Fonk's by any of these witnesses. The witnesses are just that; they are not parties to this action. Although the traditional rule requiring mutuality of parties for an assertion of collateral estoppel has been modified to allow defensive use of collateral estoppel to prevent a party from relitigating, "by merely switching adversaries," an issue already conclusively resolved against that party, *see Crowall v. Heritage Mutual Insurance Co.*, 118 Wis.2d 120, 123–25, 346 N.W.2d 327, 329–30 (Ct. App. 1984) (quoting *Bernhard v. Bank of America National Trust & Savings Association*, 122 P.2d 892, 895 (Cal. 1942)), offensive use of collateral estoppel has not yet been allowed in Wisconsin. As a result, the record and findings here are not evidence establishing the witnesses' individual claims against Fonk's. *See Sanger v. Mellon*, 51 Wis. 560, 563, 8 N.W. 487, 488 (1881).

Finally, none of these witnesses is a "person from, through or under whom a party derives his interest or title." The plaintiff in this case is the state of Wisconsin, seeking an injunction to restrain the violation of the

administrative code. The state does not derive an interest or title from any of these witnesses; stated conversely, none of these witnesses had a claim or interest which he or she transferred in some manner to the state to enable the state to maintain this action. *See Salmon v. First National Bank of Madison*, 237 Wis. 153, 156, 294 N.W. 866, 867–68 (1940).

We therefore conclude that, under a strict reading of the Dead Man's Statute, the state's witnesses were not parties or persons testifying in their own interest nor persons from, through or under whom the state derived its interest or title. As a result, we hold that the trial court correctly found them not to be incompetent to testify regarding conversations or transactions with the deceased Richard Fonk, Sr.[6]

---

[6] When counsel for Fonk's first objected to the competency of a witness to testify pursuant to the Dead Man's Statute, the trial court engaged in a proper analysis, stating:

> I don't think the witness is incompetent to testify. He's a competent witness. . . . I know what the statute says.

> However, he isn't a party, technically, here. The restitution issue may come up later. I don't know. But as the State of Wisconsin is a party trying to enforce this action, it would be similar to—in a sense, to a criminal action, and I will let him testify.

However, in its July 19, 1985 written decision, the court applied a hearsay type of analysis, stating:

> [I]f the interests of justice clearly require admission and other facts indicate the existence of an oral contract, the judge may permit the witness to testify. The justification for the Dead Man's Statute is similar to that for the exclusion of hearsay statements. . . . A review of the hearsay rules and their numerous exceptions clearly indicates a trend toward eliminating the exclusionary rules and in place balancing the need for the statement to be received against the underlying indicia of reliability.

With these evidentiary issues disposed of, we turn to Fonk's claim that the state failed to establish a violation of Wis. Adm. Code, sec. Ag 125.07 to the requisite degree of proof.

■

Both the state and Fonk's suggest that because violations of Wis. Adm. Code, ch. Ag 125 are subject to criminal penalties,[7] this is a civil action involving criminal acts requiring the middle burden of proof. *Wangen v. Ford Motor Co.*, 97 Wis.2d 260, 299, 294 N.W.2d 437, 457 (1980). This court agrees. The state, therefore, had the burden to establish a violation to a reasonable certainty by clear, satisfactory and convincing evidence. *See id.*

■

Whether a party has met its burden of proof is a question of law which we examine without deference to the trial court's conclusion. *Burg v. Miniature Precision Components, Inc.*, 111 Wis.2d 1, 12, 330 N.W.2d 192,

---

The court went on to find there to be a great need to receive the testimony about conversations with Fonk, Sr. and sufficient corroboration to overcome a claim of fabrication. While this latter analysis reflected an erroneous view of the law, the trial court's ultimate determination to allow the testimony was correct. If a trial court reaches the proper result for the wrong reason, it will be affirmed. *State v. Holt*, 128 Wis.2d 110, 124, 382 N.W.2d 679, 687 (Ct. App. 1985).

[7] Section 100.26(3), Stats., provides that any person who intentionally refuses, neglects or fails to obey any regulation or order made or issued under sec. 100.20, Stats., shall for each offense be fined not less than $25 nor more than $5,000, or imprisoned in the county jail for not more than one year, or both. Wisconsin Administrative Code, ch. Ag 125 is an "order" issued under sec. 100.20. *State v. Fonk's Mobile Home Park & Sales, Inc.*, 117 Wis.2d 94, 104, 343 N.W.2d 820, 825 (Ct. App. 1983).

198 (1983). However, in doing so, we must accept the trial court's assessment of the credibility of the witnesses and the weight to be given their testimony. *See id.*; *In re Estate of Glass*, 85 Wis.2d 126, 135, 270 N.W.2d 386, 391 (1978).

Fonk's claims that our earlier decision in this case (*"Fonk's I"*, *see* note 2) requires that the state prove, to the requisite degree, five distinct elements: (1) that the allegedly offensive lease clause was in effect when Fonk's denied permission to sell privately; (2) that there was a practice of enforcing the lease clause; (3) that market conditions (a shortage of sites) and expectations ("no site, no sale") existed which combined with the enforced lease clause to give Fonk's a monopoly; (4) that sales to Fonk's resulted, and (5) that Fonk's maintained a practice of paying less than fair market value.

It is a misapplication of *Fonk's I* to contend that we there set out "elements" necessary for proof of a violation of sec. Ag 125.07 in this case or any other. Rather, we merely indicated what the state had alleged in its complaint.

We do not agree that each of the listed factors is an "element" of the violation. The prohibition in sec. Ag 125.07 is simply against the imposition, by a park's operator, of unreasonable restrictions on the sale of mobile homes by the owners. The relevant elements of violation are therefore: (1) restrictions on sales of mobile homes by the owners; (2) that the restrictions were imposed by the operator, and (3) that the restrictions were unreasonable.

We conclude that the state met its burden in establishing these three elements. Testimony of numerous witnesses whom the trial court obviously found to be

credible, as well as the documentary evidence, demonstrated that Fonk's had a practice of refusing to allow tenants to sell their homes in place to outside purchasers. Some owners had third party offers to purchase fall through because of the restriction; others testified to unsuccessful attempts to find alternative spaces for their homes. The evidence pointed overwhelmingly to the conclusion that the restriction resulted in sales to Fonk's that would not have occurred otherwise.

Evidence that the price received by Fonk's on resale was often markedly higher than its purchase price was further proof of the coerced nature of the sales to Fonk's. Evidence that after such resales the mobile homes usually remained on the same lots or elsewhere in the same park strongly demonstrated the unreasonableness of the refusal to allow owners to sell in place. That these restrictions were not imposed in every case does not rebut the evidence. The state has established to a reasonable certainty that Fonk's imposed unreasonable restrictions on the sale of mobile homes.[8]

---

[8] Fonk's argues that some of the trial court's findings were incorrect. We consider the asserted errors to be of little moment, being *de minimis* in nature. The remaining findings of fact and the conclusion of violation are not clearly erroneous. *See* sec. 805.17(2), Stats. For us to reverse, the evidence in support of a contrary finding must itself constitute the great weight and clear preponderance of the evidence. *Cogswell v. Robertshaw Controls Co.*, 87 Wis.2d 243, 249–50, 274 N.W.2d 647, 650 (1979); *see also Noll v. Dimiceli's, Inc.*, 115 Wis.2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). As our conclusion that the state met its burden of proof necessarily implies, we find ample support in the record for the trial court's finding that Fonk's unreasonably restricted sales of mobile homes by its tenants to purchasers other than Fonk's.

The next issue Fonk's raises is that it was arbitrary and unjust for the circuit court to allow proof, and to conclude, that Fonk's engaged in the *practice* of refusing to allow owners to sell in place, because the cause of action pleaded was premised on enforcement of a *lease clause* imposing the restriction. The trial court found that Fonk's had violated sec. Ag 125.07(1) "by imposing the conditions described above, by lease and by practice . . . ." Fonk's apparently contends that without proof that the "practice" consisted of enforcing the offensive lease clause, contained in a valid lease imposed during the relevant period upon each tenant who testified at trial, the state had not proved what it alleged.

This argument is meritless. That the offensive lease clause was in effect during the period alleged in the complaint was undisputed, having been admitted by Fonk's in its answer. The state's proof at trial was necessarily directed to the practice of enforcing the restriction and to its unreasonableness. Such proof was entirely consistent with the pleaded theory of the case and the elements of the alleged violation. Therefore, we reject the argument raised by Fonk's.

Finally, Fonk's objects to the breadth of the order for judgment, both insofar as it purports to enjoin "the defendant, its past, present and future employees, agents, transferees, assigns and beneficiaries," and because Fonk's contends that "the universe of persons entitled to participate in the restitution proceeding is limited to those persons involved in the transactions upon which evidence was presented at trial."

Fonk's argues that the trial court had no jurisdiction to issue an injunction against any person not a party to this action. As noted above in footnote 4,

Fonk's is no longer the entity which owns and operates the mobile home parks. However, Richard Fonk, Jr. is a principal both of Fonk's and of Dover Properties, Ltd., which now owns and operates the parks. We agree with the state that an injunction limited to the degree Fonk's argues is proper would probably have been futile given the changes in the business organization of Fonk's since this lawsuit was instituted.

■

Broad injunctions designed to prevent evasion have consistently been upheld in labor relations and unfair trade practices cases. *See, e.g., Federal Trade Commission v. Standard Education Society*, 302 U.S. 112, 119-20 (1937); *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106-07 and n. 6 (1942); *P.F. Collier & Son Corp. v. Federal Trade Commission*, 427 F.2d 261 (6th Cir.), *cert. denied*, 400 U.S. 926 (1970). As the United States Supreme Court said of an injunction to restrain violation of the Fair Labor Standards Act:

> Not only is such an injunction enforcible by contempt proceedings against the corporation, its agents and officers and those individuals associated with it in the conduct of its business, . . . but it may also, in appropriate circumstances, be enforced against those to whom the business may have been transferred, whether as a means of evading the judgment or for other reasons. . . . And these principles may be applied in fuller measure in furtherance of the public interest . . . than if only private interests were involved.

*Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 674-75 (1944). We conclude that the form of the injunction was proper under the facts of this case.

We also conclude that the scope of the order for restitution was appropriate. The trial court has broad authority under sec. 100.20(6), Stats., to make injured parties whole. Section 100.20(6); *State v. Excel Management Services, Inc.,* 111 Wis.2d 479, 490, 331 N.W.2d 312, 317 (1983). To limit restitution to tenants who testified at trial would unduly complicate such trials in the future, prolonging the litigation with repetitious claims of unfair practices. *See State v. Ralph Williams' North West Chrysler Plymouth, Inc.,* 553 P.2d 423, 439 (Wash. 1976), *appeal dismissed,* 430 U.S. 952 (1977).

In the present case, the complaint alleged that the practices engaged in by Fonk's resulted in losses to Wisconsin residents other than those whose transactions were detailed in "Exhibit A" appended to the complaint. There was evidence at trial of other sales to Fonk's, discussed in Richard Fonk, Jr.'s deposition, the transcript of which was admitted by stipulation. This was a sufficient basis upon which the trial court could order restitution to all Wisconsin residents able to show pecuniary loss resulting from the restrictive practices by Fonk's.

*By the Court.*—Order for judgment affirmed.