Neillsville Shipping Association, Appellant, vs. Lastofka, Respondent.

*May 26—June 21, 1937.*

*H. G. Haight* of Neillsville, for the appellant.

*C. R. Sturdevant* of Neillsville, for the respondent.

NELSON, J. The trial court did not find the material and ultimate facts involved in this controversy. Such failure was probably due to the fact that upon the trial there was no dispute or conflict in the evidence. The plaintiff is a duly organized Wisconsin co-operative association with its principal place of business in the city of Neillsville. The defendant is

a cattle dealer residing in said city. On April 1, 1931, the plaintiff association entered into a "shipping agreement" with one John Galbreath of Clark county, which substantially complied with the provisions of sec. 185.08 (2), (3), Stats., wherein and whereby the said Galbreath, as producer, for a term of not more than five years, agreed to market all of his livestock, with certain exceptions not here material, through the association, and wherein and whereby the association agreed to market Galbreath's livestock upon certain terms and conditions therein mentioned. The agreement was duly filed in the office of the register of deeds of Clark county on December 15, 1931. Upon the filing of the agreement in the office of the register of deeds it was listed alphabetically under the letter "(G)" in the chattel mortgage record book as follows:

"No. 6423. Galbreath, J. Neillsville. Neillsville Shipping Association, Neillsville. Dated April 1, 1931. Shipping Agreement. Filed Dec. 15, 1931, at 4:00 P. M."

No separate book was kept by the register of deeds for the purpose of alphabetically listing or indexing the names of member makers and associations who had entered into such contracts which had been filed with the register of deeds. On August 20, 1935, the defendant purchased from John Galbreath certain livestock of the value of $80. Prior to the purchase of the stock by the defendant, Galbreath told him that his time had expired and he was out of the association and asked him to come down to his place and look at his stock.

The defendant apparently contended in the court below that the record of the Galbreath agreement was not in compliance with the provisions of sec. 185.08 (5), Stats., and therefore it did not give constructive notice of the existence of that agreement. The defendant also apparently contended that since there was no proof tending to show that the defendant maliciously induced, attempted to induce, aided in

the breach of the contract, or maliciously interfered with it, the court was free to exercise its discretion as a court of equity and refuse to grant a permanent injunction. The trial court did not in its decision express an opinion as to whether the record was sufficient to give constructive notice of the existence of the contract. All that it said in its decision on that point is as follows:

"The merits of this case, without considering the effect of filing the contracts or regarding it as a constructive notice, will warrant the court to exercise its equitable powers to refuse the granting of the permanent injunction prayed for in plaintiff's complaint, as disclosed from the evidence in the case."

The plaintiff assigns as error, (1) the failure of the court to grant a permanent injunction restraining the defendant from thereafter purchasing livestock from its members; and (2) the failure of the court to render judgment in favor of the plaintiff for $80. The defendant contends in his brief that the only question for decision is whether the Galbreath contract or agreement was properly recorded in the office of the register of deeds so as to give constructive notice of its existence.

Did the court err in refusing to grant a permanent injunction restraining the defendant from thereafter purchasing livestock from the plaintiff association's members? The court apparently was of the view that since the defendant did not intend to interfere with the plaintiff's contract, did not act maliciously in purchasing stock from Galbreath, and had no actual knowledge that the contract was still in force and effect (having been informed by Galbreath that he was no longer a member of the association), the temporary injunction should not be made permanent. Sec. 185.08 (6), Stats., provides:

"Where any contract exists between an association and a member, any person who, with knowledge or notice of the

existence of the contract, induces or attempts to induce or aids in the breach thereof by any means, shall be liable to the aggrieved party for damages on account of such interference with said contract and shall also be subject to an injunction to prevent the interference or further interference therewith."

It was under this subsection that this action was brought and the question is, Did the court err in refusing, under the undisputed facts, to make the temporary injunction permanent? The court was apparently of the view that it had a discretion either to grant or to refuse an injunction. In our view, sub. (6) does not so provide. Sub. (5), in part, provides:

". . . From and after the date of such filing the same shall constitute notice to any and all persons that an interest in the title to all property so agreed to be sold by the maker of such contract during the term of such contract is vested in the said association. In case of a purchase thereafter of any such property by any party other than the association from any party other than the association, no title of any kind or nature shall pass to such other purchaser, and the said association may recover the possession of such property from any and all such other parties or from any party in whose possession the same may be found, by replevin action, *or* may sue for an injunction."

These two subsections just hereinbefore quoted, construed together, quite clearly show that a co-operative association has several remedies for the protection of its business: (1) Replevin, when the property may be found in the possession of some person; (2) an injunction; and (3) an action to recover damages for interfering with its contract.

It appears without dispute that at the time of the purchase of Galbreath's stock by the defendant the former was still a member of the association, his contract not having expired according to its terms, nor having been canceled by mutual agreement in writing or by the final judgment of a court in an action to annul the same. Sec. 185.08 (7), Stats.

Whether the record of the Galbreath contract in the office of the register of deeds was sufficient to give constructive notice, we need not presently decide, for the reason that under the undisputed facts the defendant did know that Galbreath had been a member of the association. While Galbreath told the defendant that he was no longer a member of the association, that was a misrepresentation which in no manner affected the rights of the plaintiff association under its contract with Galbreath. The defendant must be presumed to have known the law that such a contract remains a valid contract as to all persons until its expiration according to its terms or until canceled by mutual agreement in writing or by the final judgment of a court in an action to annul the same, and that whenever such a contract shall have terminated in any of the ways above mentioned the association shall, on demand, give to the member a certificate to that effect, and the member shall, within ten days thereafter, cause the said certificate to be filed with the register of deeds in whose office the copy thereof was filed. Sec. 185.08 (7), Stats. When the defendant was told by Galbreath that his membership in the association had terminated, the defendant received actual notice of the fact that Galbreath had been a member of the plaintiff association,—a fact sufficient to put him, as a prudent man, upon inquiry, which if prosecuted with ordinary diligence, would have led to actual notice of the existence of the contract. *Brinkman v. Jones,* 44 Wis. 498, 519; *New Dells Lumber Co. v. Pfiffner,* 216 Wis. 638, 258 N. W. 375. The defendant resided at Neillsville. Had he made inquiry at the office of the register of deeds for the purpose of ascertaining whether Galbreath's contract was still in existence, before going to Galbreath's farm, he no doubt would have been correctly informed as to the fact. Co-operative contracts may not be so easily circumvented. We conclude, that under the facts of this case, the plaintiff association was entitled to a

permanent injunction, restraining the defendant from interfering with its contracts in the future.

As to the contention of the plaintiff that the court erred in failing to enter judgment in its favor for the sum of $80, the actual value of the stock purchased, it is considered unsound. The plaintiff's complaint was framed under sec. 185.08 (6), Stats. The prayer for relief is for an injunction and for damages. Sub. (6) provides in substance and effect that when a co-operative contract is breached the person inducing, attempting to induce, or aiding in the breach thereof, shall be liable to the aggrieved party for damages on account of such interference with the contract. The damages suffered by the association must be proved. They are not liquidated or stipulated as are the damages which may be recovered by a co-operative association pursuant to the terms of a contract drawn in compliance with sub. (3). That subsection does not have any relevancy in determining the damages suffered by the plaintiff association in an action brought against one not a member of the association. The damages that may be recovered by the association must be proved and reasonably sustained by the evidence.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a permanent injunction restraining the defendant from interfering with the plaintiff's contracts with its members, and further directing the circuit court to grant a new trial on the question of damages sustained by the plaintiff association.