RAMAKER and others, Plaintiffs and Respondents, v. CITIES SERVICE OIL COMPANY, Defendant and Appellant: THEUERKAUF, Defendant.*

*March 2—March 30, 1965.*

* Motion for rehearing denied, with costs, on June 1, 1965.

146

For the appellant there were briefs by *Hanley, Wedemeyer & Cavanaugh,* attorneys, and *John M. Hanley* and *Robert F. Cavanaugh* of counsel, all of Milwaukee, and oral argument by *Robert F. Cavanaugh.*

For the respondents there was a brief by *Grootemaat, Cook & Franke,* attorneys, and *John J. Ottusch* of counsel, all of Milwaukee, and oral argument by *Mr. Ottusch.*

CURRIE, C. J.   The three questions presented by this appeal are:

(1) What is the zoning regulation of the south 60 feet of Cities Service's premises?

(2) Do defendants' activities on these south 60 feet constitute a zoning-ordinance violation?

(3) If question No. 2 is answered in the affirmative, have any of the plaintiffs sustained injury by reason of defendants' illegal activities sufficient to entitle them to the permanent injunction entered by the circuit court?

*Applicable Zoning Regulations.*

If only the uses permitted under Milwaukee zoning ordinances for "Parking Districts" are applicable to the south

60 feet, such uses are those specified in sec. 16–7.3 of the City of Milwaukee Code as follows:

"In a parking district, no building, structure, or premises shall be used which is arranged, intended, or designed to be used for an occupancy or use other than that specified herein.

"1. In a parking district, a premises may be used for . . . parking . . . of private noncommercial motor vehicles except that commercial vehicles with a rated capacity not exceeding one and one-half tons may be permitted to park on a parking lot . . . provided for customer use, . . .

"2. The development and maintenance of the premises for the . . . parking of motor vehicles shall be in compliance with the following regulations: . . . .

"h. Parking lots shall not be used for automobile repair work or servicing of any kind other than that which may be legally performed upon a public street; or for the sale, display, demonstration or advertising of merchandise or service of any kind; or for the dead storage of motor vehicles . . . above the ground or by placing a 'For Sale' sign on such motor vehicles."

During the course of trial defendants introduced in evidence a certified copy of Ordinance No. 58 of the city of Milwaukee enacted June 8, 1925, which amended the city's zoning ordinance. Among other things, Ordinance No. 58 provided:

"Where a district boundary line divides a lot in single ownership at the time of the passage of this chapter, the regulations for either portion of such lot may extend to the entire lot, but not more than 50 feet beyond the boundary line of the district for which such regulations are established."

Cities Service asserts that this provision was in effect in 1931, when a building permit was issued for the erection of the filling station, which had the effect of changing the north 50 of the south 60 feet of the premises into a "Local Business" use district.

Ordinance No. 58 purported to amend sec. 9–24 of the then existing zoning ordinance. As used in sec. 9–24, "lot" was defined as follows:

"A lot is a parcel of land in single ownership occupied by not more than one building and the accessory buildings or uses customarily incident to it including such open spaces as are required by this chapter. . . ."

In 1931, when the first filling station was erected, a two-story residence stood to the rear which was then occupied and remained until torn down in 1956. Thus there were two buildings on the premises, the filling-station building and the house, neither of which was accessory to the other. Therefore, it would seem that the premises failed to meet the above-quoted definition of "lot." However, we find it unnecessary to decide this point because of the effect we accord to the 1958 amendment to the zoning ordinance.

Cities Service also claims that the building permit issued in 1942 recognized a use of the south 60 feet of the premises which was inconsistent with this portion being zoned a residence-use district. The answer to this is that a building inspector cannot change a zoning-use district by issuing a permit in violation of a zoning ordinance. Actually the 1931 and 1942 permits did not violate the zoning ordinance although the applications for the permits indicated the owner's intent to put to an illegal use an adjoining portion of the land not occupied by the building covered by the permit.

There was evidence that for a few years prior to the tearing down of the two-story residence in 1956 some repairing of automobiles had been done commercially in a coach house appurtenant to the residence and located on the south 60 feet of the premises. These repair operations were begun long after the zoning ordinance had been enacted at a time when that portion of the premises was included in a residence-use

district. Thus these repair operations constituted an illegal nonconforming use upon which Cities Service can predicate no right. *Wilson v. Kunstmann* (1959), 7 Wis. (2d) 387, 96 N. W. (2d) 709; *David A. Ulrich, Inc., v. Saukville* (1959), 7 Wis. (2d) 173, 96 N. W. (2d) 612.

Cities Service also introduced in evidence a certified copy of Ordinance No. 35 enacted May 10, 1915, relating to business sections and fire-district lines. This ordinance has nothing to do with zoning since it had been enacted five years prior to the 1920 zoning ordinance, and, therefore, it has no materiality on the use-district zoning of the south 60 feet of the instant premises.

We further determine that the effect of the 1958 amendment of the zoning ordinance whereby the south 60 feet were changed to a "Parking District" use, which change was made at Cities Service's request, is to restrict the use that can be made of these 60 feet to that permissible in a "Parking District." Cities Service argues against this result by asserting that, in securing this amendment, it did not intend to waive any rights it already possessed to make a different use of these 60 feet than would be permitted in a "Parking District." However, we fail to perceive how the issue of waiver is material. Having secured the change it requested in the zoning law, it is bound thereby.

For the reasons stated, we conclude that the uses to which Cities Service may put the south 60 feet of its premises are restricted to those permitted in a "Parking District" as set forth in the previously quoted provisions of the city zoning ordinance relating to permissible uses in such a district.

*Zoning Violation by Defendants.*

We come now to the issue of whether defendants' activities on the south 60 feet of Cities Service's premises violate the zoning-ordinance restrictions applicable to a parking district.

In passing on this issue we deem it essential to consider the objective for creating a parking-district-use classification. Obviously it is to provide an area where motorists may park their automobiles while at work, shopping, attending places of entertainment, or ministering to other needs. With our burgeoning population and constantly increasing number of motor vehicles, providing adequate parking space in metropolitan areas presents a serious problem. The queues of automobiles formed to enter the south entrance of the auto laundry pre-empt the parking space available on this south 60 feet and prevent its use for parking purposes. These queues of cars are an integral part of a car laundry which is not a permissible use in a parking district. The circuit court properly held that defendants' operations within the portion of Cities Service's premises so zoned constitutes a zoning-ordinance violation.

Cities Service points to the fact that, if the south 60 feet of its premises were to be devoted to use as a parking lot, of necessity there would be movement of cars on the premises in entering, parking, and leaving. Thus it is argued that the moving queues of cars into the auto laundry entails a similar movement of cars. The fallacy of this argument is that in one instance the car movement is incidental to an authorized use while in the other it is incidental to an illegal use.

Cities Service also attempts to justify defendants' operations on the south 60 feet by paragraph (1) of sec. 16–7.3 of the city zoning ordinances, which provides:

"Parking lots shall not be used for automobile repair work or servicing of any kind other than that which may be legally performed on a public street; . . ."

Because a car owner might clean or wash his car on a public street, or line up on a street to get into an auto laundry, it is contended that the above-quoted provision of the ordinance extends the same uses to land zoned as a parking

district. The quoted language is not subject to such a strained interpretation. Obviously it was aimed at preventing a parking lot from being used as an auto repair shop. By permitting those repair and servicing activities which might be legally performed on a public street, the ordinance prohibits all but emergency repair and servicing in a parking district. Nothing beyond this is to be read into the ordinance language by implication.

*Injury to Plaintiffs.*

The last point raised by Cities Service is that none of the plaintiffs sustained damage because of defendants' operations on the south 60 feet, which is sufficient to support the permanent injunction which was entered.

Plaintiff Ramaker resides with her sister on the west side of North Twenty-Fifth street, across the street from the Cities Service premises and can see the south 60 feet thereof from her home. Plaintiff Kupper owns the property immediately to the south of the Cities Service premises. In their testimony they testified to the disturbing noise generated by defendants' operations on the south 60 feet of the latter premises. Sometimes operations of the car wash extend to nine o'clock at night and on Sundays to two o'clock in the afternoon. In contrast, before the erection of the auto laundry, when such 60 feet were used for parking, there were no disturbing noises.

The trial court found as a fact that the illegal activities on the parking district have decreased the enjoyment of the Ramaker and Kupper homes. The night lighting and the additional noise generated on the parking district fully support this finding. There are also esthetic considerations which are very important to respondents in the enjoyment of their homes. This is a residence area with flats, apartment buildings, and churches. A filling-station parking lot,

particularly if operated by good housekeepers, would not be a source of irritation. Instead, plaintiffs now must look out upon the jumble of activity created by movement of cars and workmen over the parking district and steam cleaning at the south door of the auto laundry.

Plaintiff, The Markdale Corporation, is the owner of a nearby apartment building. The circuit court found that there was no probative evidence presented that defendants' operations had decreased the value of its premises, and thus the injunction was grounded upon the injury sustained by the other two plaintiffs.

Sec. 62.23 (7) (f) 2, Stats., provides:

"In case any . . . land is . . . used in violation of this section or of any ordinance or other regulation made under authority conferred hereby, the proper authorities of the city, or any adjacent or neighboring property owner who would be specially damaged by such violation may, in addition to other remedies, institute appropriate action or proceedings to prevent such unlawful . . . use; to restrain, correct or abate such violation; . . . or to prevent any illegal act, conduct, business or use in or about such premises."

Thus we are dealing here with an injunction specially authorized by statute. Special damage to adjacent or neighboring property owners resulting from a particular zoning-ordinance violation provides the statutory ground for issuance of an injunction to restrain the illegal use. There may be situations where because of laches or estoppel a court of equity will be justified in denying an injunction at the suit of private parties, but any element of laches or estoppel is completely lacking here. Decisions of this court in which zoning violations have been enjoined in actions instituted by adjacent or neighboring property owners are: *Holzbauer v. Ritter* (1924), 184 Wis. 35, 198 N. W. 852; *Bouchard v. Zetley* (1928), 196 Wis. 635, 220 N. W. 209,

The finding by the circuit court, that defendants' illegal activities have decreased the enjoyment of the homes of plaintiffs Ramaker and Kupper, is not against the great weight and clear preponderance of the evidence. This finding establishes that these two plaintiffs have been specially damaged within the meaning of sec. 62.23 (7) (f) 2, Stats., and affords an adequate basis for the granting of the permanent injunction.

*By the Court.*—Judgment affirmed.