FOREST COUNTY, a political subdivision of the State of Wisconsin, Plaintiff-Appellant,

STATE of Wisconsin, Intervenor

v.

Wesley S. GOODE, Defendant-Respondent-Petitioner.

Supreme Court

*No. 96–3592. Oral argument May 28, 1998.—Decided July 1, 1998.*

(Also reported in 579 N.W.2d 715.)

654

For the defendant-respondent-petitioner there were briefs by *John F. Hovel, Susan A. Philpott* and *Kravit & Gass, S.C.*, of counsel, *Mark C. Darnieder* of *Darnieder, West & Davis*, all of Milwaukee, and oral argument by *John F. Hovel*.

For the plaintiff-appellant the cause was argued by *Michael J. Gableman*, assistant Forest County corporation counsel, with whom on the brief was *Fred W. Kawalski*, Forest County corporation counsel.

For the intervenor the cause was argued by *Maryann Sumi*, assistant attorney general with whom on the brief was *Lorraine C. Stoltzfus*, assistant attorney general and *James E. Doyle*, attorney general.

¶ 1. JANINE P. GESKE, J. In this case we are asked to determine whether a circuit court retains equitable power to deny injunctive relief after a zoning ordinance violation has been proven. Forest County instituted enforcement proceedings under Wis. Stat. § 59.69(1) against Wesley S. Goode for noncompliance with a zoning ordinance. The County requested assessment of forfeitures and an injunctive order compelling Goode to relocate his house to comply with a 50-foot setback requirement of Forest County Zoning Ordinance § 5.03.10. The Circuit Court for Forest County, Robert A. Kennedy, Judge, denied the County's request for an injunction but imposed a forfeiture against Goode. The County appealed from both orders of the circuit court.

656

¶ 2. In a split decision,[1] the court of appeals reversed the circuit court's order denying injunctive relief after holding that Wis. Stat. § 59.69(11) (1995–96)[2] does not give a circuit court equitable power to deny injunctive relief after a zoning ordinance violation has been proven. Next, the court of appeals unanimously reversed the circuit court's calculation of the forfeiture amount. Goode seeks review only of the court of appeals' reversal of the order denying injunctive relief.

¶ 3. We conclude that Wis. Stat. § 59.69(11) gives the county or an owner of real estate within the district affected by the zoning regulation the option of asking a circuit court sitting in equity for injunctive relief as a remedy for a zoning ordinance violation. However, we also conclude that the legislature did not intend to eliminate the traditional equitable powers of the court through § 59.69(11). Accordingly, we hold that when a circuit court is asked to grant injunctive relief for a proven zoning ordinance violation, § 59.69(11) does not eliminate the circuit court's equitable power to deny injunctive relief in a particular case. In this case, the circuit court erroneously failed to take sufficient evidence and failed to weigh the proper equitable considerations. We therefore affirm the court of appeals' decision reversing the order of the circuit court and remanding for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 4. Goode owns two adjoining lakefront lots on Ground Hemlock Lake in Forest County. In 1993 he

---

[1] *Forest County v. Goode*, 215 Wis. 2d 217, 572 N.W.2d 131 (Ct. App. 1997).

[2] All future statutory references will be to the 1995–96 volume unless otherwise indicated.

decided to tear down an existing structure on one of the lots, and construct a new residence on the entire property. In June of 1993, Dawn Schmidt, the Forest County zoning administrator, met with Goode at the property and together they roughly measured and staked a distance of 50 feet from the ordinary high water mark (OHWM), as required by Forest County Zoning Ordinance § 5.03.10. Goode obtained a building permit to construct the new house 50 feet from the OHWM of Ground Hemlock Lake.[3]

¶ 5. Goode hired Dan Stampfl to assist in constructing the new residence. Stampfl retained Flannery Trucking to perform the excavation work. Prior to excavation, Stampfl and Flannery observed the stakes Goode placed on the property after making his own measurements. After the excavation but prior to pouring the concrete footings and cement walls, Stampfl remeasured and restaked the property. In March of 1994, a citizen contacted Schmidt to report that there might be a problem with the setback at Goode's property. Schmidt returned to the residence in May of 1994 and measured the distance from the house to the OHWM. She learned that the distance from the northern corner of the home to the OHWM was only 35 feet rather than the required 50 feet. On May 19, 1994, Schmidt advised Goode by letter that the location of his residence violated the 50-foot setback requirement of

---

[3] The County issued Goode the permit pursuant to FOREST COUNTY, WI ORDINANCE § 5.03.10 which states in part:

A reduced setback from the waterline may be permitted by the zoning administrator where there are at least five main buildings within 500 feet of the proposed site that are built to less than the required setback. In such cases, the setback shall be the average of the nearest main building on each side of the proposed site except that in no case shall the setback be less than 50 feet.

ordinance § 5.03.10. Goode responded that the violation was unintentional and requested to meet with the zoning committee. Goode requested a variance for the property, which the committee denied. The County initiated this enforcement action, requesting forfeitures and an injunction requiring Goode to comply with the setback requirements.

¶ 6. Following a trial in September of 1996, the circuit court denied the County's request for injunctive relief, finding that Goode's violation was unintentional, the cost to move the house would be very high, and no property owners in the area would be harmed by allowing the house to remain where it was.[4] The circuit court imposed a forfeiture against Goode at a per diem rate of $35, for a total of $8,540, plus $814.58 in court costs. The circuit court calculated the forfeiture using 244 days, the number of days from the notice of the violation (the May 19, 1994, letter from the county zoning administrator) until the County filed the complaint (January 18, 1995). The County appealed.

¶ 7. The court of appeals, with Judge Hoover dissenting, reversed and remanded. The court of appeals concluded that the plain meaning of Wis. Stat. § 59.69(11) "does not. . .create a discretionary standard for the trial court to follow in determining whether injunctive relief is warranted." *Forest County*, 215 Wis. 2d at 223. On that basis, the court of appeals held that it was an improper exercise of the circuit court's discre-

---

[4] In making its findings, the circuit court stated:

"Well, what are the competing interests? One of the interests is the desire of the county to have it's [sic] ordinance complied with. But there's no property owners harmed in that area. At least none have come forward. . . .There's no indication of anybody on that lake being against this particular defendant in this case. So the only thing we have is the fact that the ordinance is not complied with." Record transcript at 109.

tion to deny the County's request for an injunction requiring compliance with the 50 foot setback requirement. *See id.* at 226.[5] The court of appeals reasoned that "the legislative decision to allow municipalities to pursue injunctive relief to effectuate compliance with the ordinance implies entitlement to the relief sought upon meeting the burden of proof." *Id.* at 227. Hence, the court of appeals concluded that the County was entitled to injunctive relief.

¶ 8. In the court of appeals' view, a circuit court's refusal to grant injunctive relief under Wis. Stat. § 59.69(11) would judicially usurp the legislative function. Specifically, denial of injunctive relief would, according to the court of appeals, nullify the decision of the body legislatively vested with the authority to make variance determinations. *See id.* at 227. In addition, the court of appeals reasoned that a refusal to grant injunctive relief here would infringe upon the public's right to have zoning ordinances enforced, would increase the dangerous cumulative effects of zoning violations, and would allow persons to "purchase" zoning variances by allowing forfeitures as a remedy in some cases. *See id.* at 228–29.

¶ 9. The court of appeals then turned to the County's claim that the circuit court erred in calculating the forfeitures. Forest County's Ordinance § 20.05.1 states: "Any person who violates this ordinance shall be subject to a fine up to $200.00, plus costs

---

[5] Although the court of appeals majority couches its conclusion in terms of "an improper exercise of discretion," what it really held is that the circuit court has no equitable power to deny injunctive relief under Wis. Stat. § 59.69(11), once a violation is proven and such relief is requested. Thus, the court of appeals concluded that the circuit court made an error of law, and not an erroneous exercise of discretion.

of prosecution. . .Each day the violation continues shall be considered a separate offense." Relying upon *Village of Sister Bay v. Hockers*, 106 Wis. 2d 474, 317 N.W.2d 505 (Ct. App. 1982), the court of appeals determined that Goode's forfeiture should not be based upon 244 days, but upon the 861 days between the filing of the complaint until the time of trial. *See Forest County*, 215 Wis. 2d at 229–230.

¶ 10. Accordingly, the court of appeals remanded the case to the circuit court for a determination, in its discretion, of the per diem forfeiture to be imposed for the period of 861 days. *See id.* at 230. Goode seeks review only of the court of appeals' reversal of the circuit court's order denying injunctive relief. We granted the State's request to intervene in this review.

## STATUTORY INTERPRETATION

■■■■

¶ 11. The County brought this enforcement action under Wis. Stat. § 59.69(11). That section reads:

> PROCEDURE FOR ENFORCEMENT OF COUNTY ZONING ORDINANCE. The board shall prescribe rules, regulations and administrative procedures, and provide such administrative personnel as it considers necessary for the enforcement of this section, and all ordinances enacted in pursuance thereof. The rules and regulations and the districts, setback building lines and regulations authorized by this section, shall be prescribed by ordinances which shall be declared to be for the purpose of promoting the public health, safety and general welfare. The ordinances *shall be enforced by appropriate forfeitures*. Compliance with such ordinances *may also be enforced by injunctional order* at the suit of the county or an owner of real estate within

the district affected by the regulation. (Emphasis added.)

Whether the circuit court has equitable power to deny injunctive relief once a zoning ordinance violation is proven under § 59.69(11) is a question of statutory interpretation. Statutory interpretation is a question of law we review independently, benefiting from the analysis of the circuit court and the court of appeals. *See Aiello v. Village of Pleasant Prairie*, 206 Wis. 2d 68, 70, 556 N.W.2d 697 (1996); *Town of Clearfield v. Cushman*, 150 Wis. 2d 10, 19, 440 N.W.2d 777 (1989). Ascertaining legislative intent is the goal of statutory interpretation. *See State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997). We begin with the plain language of the statute itself. *See id.* We do not look beyond the plain language of the statute to ascertain its meaning if the legislative intent is clear. *See id.*

## I.

¶ 12. The pertinent part of the statute we are asked to interpret reads: "The (county zoning) ordinances *shall be enforced* by appropriate forfeitures. Compliance with such ordinances *may also be enforced* by injunctional order instituted at the suit of the county or an owner of real estate within the district affected by the regulation." Wis. Stat. § 59.69(11)(emphasis added). This section uses the terms "shall" and "may" in close proximity to one another. Goode argues that the legislative intent is plainly demonstrated when the legislature chose to use the mandatory term "shall" in providing for forfeitures, and in choosing the directory term "may" when providing for injunctive relief. Use of the word "may," according to Goode, preserves a circuit court's traditional equitable discretion to decide in a particular case

whether and what manner of injunctive relief is warranted.

¶ 13. Goode relies on *Swatek v. County of Dane*, 192 Wis. 2d 47, 59, 531 N.W.2d 45 (1995), where this court concluded that "when the words 'shall' and 'may' are used in the same section of a statute, one can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings." Additionally, Goode points to *Wauwatosa v. Milwaukee County*, 22 Wis. 2d 184, 191, 125 N.W.2d 386 (1963), where we characterized "may" as permissive and "shall" as mandatory unless a different construction is required by the statute to carry out the clear intent of the legislature.

¶ 14. The State contends that the statute plainly does not give circuit courts discretion over whether to require compliance with zoning ordinances. The State endorses the court of appeals' view that the only discretion provided by the statute is vested in the county or affected property owners. In the alternative, the State contends that the statute is ambiguous, and thus the State turns to rules of statutory construction.

■

¶ 15. If a statute is capable of being understood in two or more different senses by reasonably well-informed people, it is ambiguous. *See Setagord*, 211 Wis. 2d at 406. A statute is not rendered ambiguous merely because the parties disagree as to its meaning. *See id.*

¶ 16. In this case, the court of appeals undertook a plain meaning analysis of the statute, and concluded that the only discretion permitted by the statute is that of the county or resident to decide whether to seek injunctive relief. *See Forest County*, 215 Wis. 2d at 223. Thus, the County and the State read the subject of the

phrases "shall be enforced by appropriate forfeitures" and "may also be enforced by injunctional order" to be, in both cases, the county or resident bringing the enforcement action. We agree with this reading of the statute.

¶ 17. Next, the County and the State assert that because zoning ordinance violations are to be enforced by a statutory injunction rather than a common law remedy, the circuit court's traditional equitable power to consider denying the injunction is eliminated. The court of appeals agreed, concluding that nothing in the statute created a discretionary standard for the circuit court to follow in determining whether injunctive relief is warranted. *See id.* at 223.

¶ 18. We conclude that the statute is silent as to whether the legislature intended to eliminate the circuit court's traditional equitable power in deciding whether to grant injunctive relief. This silence renders the statute ambiguous, because well-informed persons reasonably could read the statute as placing no restriction on the circuit court's traditional equitable powers. Other well-informed persons reasonably could read the statute as requiring the circuit court, once a zoning ordinance violation is proven, to issue an injunction. Because the statute is ambiguous, we may look to the scope, history, context, subject matter, and object of the statute in order to ascertain the legislative intent. *See Setagord*, 211 Wis. 2d at 406.

## II.

¶ 19. The State contends that the context and subject matter of the statute demonstrate a legislative intent to eliminate the equitable power of the circuit court to deny an injunction when a zoning ordinance violation is proven. The State invokes the statutory

construction rule that statutes are read *in pari materia*, or in other words, that statutes relating to the same subject matter are read together. The State urges us to read Wis. Stat. § 59.69(11) in conjunction with statutes concerning the procedure for obtaining zoning ordinance variances, Wis. Stat. §§ 59.694(7) and 59.692(4)(b). By reading those provisions together, the State contends we will discern a legislative intent to eliminate the circuit court's equitable power:

59.692. Zoning of shorelands on navigable waters.

. . .

(4)(b) Variances and appeals regarding shore-lands within a county are for the board of adjustment for that county under s. 59.694, and the procedures of that section apply.[6]

59.694. County zoning, adjustment board.

. . .

(7) Powers of board. The board of adjustment shall have all of the following powers:

. . .

(b) To hear and decide special exception to the terms of the ordinance upon which the board is required to pass under such ordinance.

(c) To authorize upon appeal in specific cases variance from the terms of the ordinance that will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the

---

[6] This section, Wis. Stat. § 59.692, was enacted in 1965 as Wis. Stat. § 59.971. *See* 1965 Laws of Wisconsin ch. 614.

ordinance shall be observed and substantial justice done.[7]

¶ 20. Reading those statutory sections together, the State then invokes the rule of construction that when a general statute and a specific statute are compared, the specific statute takes precedence. *See Milwaukee v. Kilgore*, 193 Wis. 2d 168, 185, 532 N.W.2d 690 (1995). The State and the County view Wis. Stat. § 59.69(11) to be a general statutory provision and the statutory variance provisions as "a bit more specific." Accordingly, the State and County contend that the more specific variance provisions take precedence over the general zoning ordinance enforcement statute. The State and County argue that the legislature could not have intended that a circuit court possess the equitable power to nullify the variance procedures.

¶ 21. There is a certain tension between the variance and the ordinance enforcement provisions. If a property owner is denied a variance for his or her non-complying property, and the county brings an enforcement action which results in forfeitures but no injunctive relief, the property owner could remain in indefinite non-compliance.[8]

---

[7] This section Wis. Stat. § 59.694, was enacted in 1927 as Wis. Stat. § 59.98. *See* 1927 Laws of Wisconsin ch. 408. The language of this section has remained the same.

[8] We note that whether the property owner may later take steps to achieve compliance could be affected by the size of the forfeiture imposed. None of the parties dispute that together, the enforcement statute and Forest County Zoning Ordinance § 20.05.1 give the circuit court discretion in setting the amount of the forfeiture up to a maximum of $200.00 per day. *See also, State v. Spielvogel & Sons Excavating, Inc.*, 193 Wis. 2d 464, 478, 535 N.W.2d 28 (Ct. App. 1995) ("A trial court has a wide

■

¶ 22. While we recognize this tension between the enforcement provisions of Wis. Stat. § 59.69(11) and the variance procedures of Wis. Stat. §§ 59.692(4)(b) and 59.694(7)(b) and (c), we do not view § 59.69(11) as canceling the other sections. Both the section providing authority to consider requests for variances, § 59.69(4), and the zoning ordinance enforcement provision at issue here, § 59.69(11), were passed by the same legislature as part of the 1927 Laws of Wisconsin. This is a clear indication that the legislature intended the two remedies for zoning ordinance violation to co-exist. Nothing in the legislative history for those two provisions demonstrates an intent of the legislature to eliminate the traditional equitable powers of the trial court in deciding whether to order injunctive relief after a zoning ordinance violation is proven.

¶ 23. In addition, when the legislature enacted Wis. Stat. § 59.692(4)(b) in 1965, specifically providing that variances from shoreland zoning requirements are reviewed by county boards of adjustment, we can presume that the legislature was aware of both the ordinance enforcement mechanism and the general zoning variance appeal procedures it had put in place almost 40 years earlier.

¶ 24. The State correctly asserts that the writ of certiorari is the sole method of review for denial of a variance. *See* Wis. Stat. § 59.694(10). The zoning ordinance enforcement statute, Wis. Stat. § 59.69(11), does not create an alternate means of review for a variance denial, nor can it result in granting a variance. Rather, § 59.69(11) is an enforcement mechanism available

range of discretion in fixing the amounts of forfeitures. . .(for) violations based on the facts of the individual case.").

when a property owner does not comply with the zoning ordinance.

¶ 25. Our reading of the zoning statutes reveals that there is no prescribed sequence to instituting a proceeding under either the variance request and appeal procedure or the ordinance enforcement mechanism. A county or an owner of real estate in the district affected by the regulation need not wait for a property owner to seek a variance, or appeal denial of a variance, before the county or resident can seek enforcement under Wis. Stat. § 59.69(11). Similarly, if a property owner seeks but is denied a variance, neither the county nor district property owners are required to enforce compliance. If and when the county or a district property owner chooses to pursue an enforcement action remains at their discretion. Significantly, the board of adjustment, which has responsibility to consider variance requests, *see* Wis. Stat. § 59.694, has no authority under Wis. Stat. § 59.69(11) to enforce an ordinance violation. The fact that the two statutory procedures co-exist does not mean that the court's equitable power to grant or deny injunctive relief will eviscerate the variance appeal procedure.

¶ 26. Moreover, certiorari review of a board of adjustment's decision to grant or deny a variance reviews the propriety of the board's action. The board's action focuses on protection of the land and the purpose of the zoning ordinance. The board of adjustment has no equitable power. The board only reviews whether the applicant met his or her burden to establish that, in the absence of a variance, he or she will have no reasonable use of the land. *See State v. Kenosha County Board of Adjustment*, 218 Wis. 2d 396, 577 N.W.2d 813 (1998).

## TRADITIONAL EQUITABLE POWER

¶ 27. This case focuses on the scope of the circuit court's authority once the plaintiff has proven a prima facie case of zoning ordinance violation. None of the parties contend that the County has failed to prove a prima facie case here. The only issue in dispute is whether, by enacting Wis. Stat. § 59.69(11), the legislature intended to eliminate the circuit court's equitable power to deny an injunction if appropriate under the circumstances. Most of the cases cited by the parties, and discussed below, address what is necessary to make a prima facie case for statutory injunctive relief, rather than addressing whether the circuit court retains equitable power to deny the injunction.

¶ 28. Goode argues that the legislature did not intend to eliminate the traditional equitable power of the circuit court when it enacted Wis. Stat. § 59.69(11). Because the legislature is presumed to act with knowledge of existing law, Goode asks us to consider the case law in effect at the time § 59.69(11) was enacted. *See Town of Madison v. City of Madison*, 269 Wis. 609, 614, 70 N.W.2d 249 (1955) (declaring that statutes are to be construed in harmony with existing law, and as part of a general and uniform system of jurisprudence).

¶ 29. We begin our analysis of this issue by looking at an early case describing the traditional equitable power of the trial court relative to common law injunctions. *See Gimbel Bros. v. Milwaukee Boston Store*, 161 Wis. 489, 154 N.W. 998 (1915).

> While the power to issue mandatory[9] injunctions is vested in courts of equity, it is a power which is

---

[9] The term "mandatory" in this quotation goes to the nature of the injunctive order, and not to the court's power to grant the order. *See* 4 Ziegler, *Rathkopf's The Law of Zoning and Plan-*

sparingly used. High, on Injunctions, § 2. The granting of an injunction rests in the sound discretion of the court. The power itself being great, a high degree of judgment is required in order to use it wisely and never to abuse it. . . .Equity should not be successfully invoked merely to inflict injury or damage on the defendant without securing any substantial right or benefit to the plaintiff (citations omitted).

*Gimbel Bros.*, 161 Wis. at 496.

¶ 30. Typically, when a party seeks injunctive relief, the circuit court exercises its discretion in deciding whether to grant injunctive relief, and if so, in what form. *See Webster v. Dane Corp.*, 9 Wis. 2d 437, 440, 101 N.W.2d 616 (1960). Injunctive relief is not ordered as a matter of course, but instead rests on the sound discretion of the court, to be used in accordance with well-settled equitable principles and in light of all the facts and circumstances of the case. *See McKinnon v. Benedict*, 38 Wis. 2d 607, 616, 157 N.W.2d 665 (1968); *see also, Christie v. Lueth*, 265 Wis. 326, 334, 61 N.W.2d 338 (1953); *Maitland v. Twin City Aviation Corp.*, 254 Wis. 541, 549, 37 N.W.2d 74 (1949).

¶ 31. We now turn to more recent case law discussing statutory injunctions. All three parties here rely upon the *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 288 N.W.2d 129 (1980), but for different assertions. The State and County assert *Bylewski* demonstrates that for purposes of zoning ordinance

_____

*ning*, § 45.02[1][a] (4th ed. Supp. 1997): "An injunction is an equitable remedy which a court can use to compel compliance with an ordinance (an injunction mandatory in form) or to restrain a threatened or existing violation (an injunction prohibitory in form)."

enforcement, the court must grant an injunction at the plaintiff's request. Goode asserts *Bylewski* reinforces the traditional view that injunctive relief is left to the equitable discretion of the court.

¶ 32. The suit in *Bylewski* arose when a property owner purchased land with a nonconforming structure, a mobile home, on it. When the property owner took down the nonconforming structure and replaced it with a newer version, the county sued in the county court under the small claims procedures statute. The county sought a forfeiture for violation of a zoning ordinance prohibiting structures like the mobile home from use in a recreation district. After the trial, the county court concluded that the landowner's mobile home violated the ordinance, and that the landowner had constructed his garage without a permit. The county court then ordered the landowner to remove his mobile home and garage from the property. *See Bylewski*, 96 Wis. 2d at 159–60. The landowner appealed. Only one issue addressed in *Bylewski* is significant to the case before us.

¶ 33. Bylewski asserted that the county court lacked authority under the small claims procedures to recover a forfeiture for a zoning ordinance violation and to issue an injunctive order to enforce compliance. This court held that the county court lacked authority to issue any injunctional relief under the small claims statute. *See id.* at 167. The *Bylewski* court recognized that Wis. Stat. § 59.97(11), the predecessor to Wis. Stat. § 59.69(11), allowed both the imposition of forfeitures as well as the enforcement of zoning ordinances by injunctive orders. *See id.* at 162. The *Bylewski* court distinguished between a suit for forfeitures and a suit for injunctive relief, because the latter " *is an action in*

671

*equity." Id.*[10] (Emphasis added.) In the absence of a specific enabling statute, the county court was not authorized to grant injunctive relief. *See id.* at 163–166.

¶ 34. En route to reaching that conclusion, the *Bylewski* court emphatically distinguished between two forms of relief for noncompliance with a zoning ordinance. "[A]n action to recover a forfeiture and a suit seeking injunctional relief are fundamentally different in nature." *Id.* at 167. First, the court observed that to recover forfeitures, the proponent need only introduce the ordinance and prove its violation by a preponderance of the evidence. In contrast, the court observed that:

> [A] suit for an injunctional order is addressed to the discretion of the court and requires that there be a balancing of the competing equities and interests involved. "The true inquiry in determining [whether to grant injunctional relief prohibiting the continuation of an unlawful use or the issuance of an order for the removal of a nonconforming building or structure] is whether the building or structure is legally usable (or modifiable and legally usable) and is intended to be used for a main or accessory use which is permitted by the applicable ordinance or by-law." *Town of Sterling v. Poulin*, 2 Mass. App. 562, 316 N.E.2d 737, 739 (1974); *See*

---

[10] The statute at issue in *Columbia County v. Bylewski*, 94 Wis. 2d 153, 288 N.W.2d 129 (1980), Wis. Stat. § 59.97(11), provided:

> PROCEDURE FOR ENFORCEMENT OF COUNTY ZONING ORDINANCE. . . .Such ordinances shall be enforced by appropriate fines and penalties. Compliance with such ordinances may also be enforced by injunctional order at the suit of such county or the owner or owners of real estate within the district affected by such regulation.

*also*: 82 Am. Jur. 2d, *Zoning and Planning*, sec. 252 at 787 (1976). "However, where it has been clear that the offending building or structure could not be utilized for any purpose permitted in the pertinent zoning district, relief has been extended to include an order for the removal of the building or structure." *Id.* at 739.

*Id.*

¶ 35. Goode argues that the first two sentences of this discussion in *Bylewski* support the circuit court's traditional power to balance the equities in reaching its decision on injunctive relief. The County and the State argue, and the court of appeals agreed, that the discussion in *Bylewski* most relevant to this case is its description of the "true inquiry" test of whether an injunction should be ordered—an inquiry which merely involves a determination of whether the building is legally usable or modifiable and legally useable.

¶ 36. The court of appeals in this case concluded that because Goode's property can be modified to a legal use, an injunctive order was proper. *See Forest County*, 215 Wis. 2d at 226. *Bylewski* does not support that reasoning, however. First, whether the offending structure is legally useable, or modifiable and legally useable, is not an ultimate test. However, such an inquiry may well be a factor that a court, sitting in equity, may consider in its balancing of the equities.

¶ 37. Second, we do not read the statement in *Bylewski* that "relief has been extended" to include injunctive relief to denote a situation where the court is prohibited from exercising its discretion or has been legislatively required to order injunctive relief. That statement instead supports Goode's argument that Wis. Stat. § 59.69(11) does not eliminate the traditional equitable power of the circuit court.

¶ 38. We acknowledge that on occasion, the legislature has imposed upon the circuit court an affirmative duty to grant injunctive relief. The State points to another enforcement statute to support its argument that the legislature has enacted statutes that eliminate a circuit court's equitable power to deny an injunction. *See Pure Milk Prod. Coop. v. National Farmers Organ.*, 90 Wis. 2d 781, 280 N.W.2d 691 (1979).

¶ 39. The language of the 1975 statute in *Pure Milk*, Wis. Stat. § 185.43(2), however, differs from the statutory language at issue here:

> [a]ny person, with actual or constructive notice that a contract [authorized by sec. 185.41, Stats.] exists, who induces or attempts to induce any member to breach or repudiate his contract with the association, or who in any manner aids a breach of such contract, is liable to the aggrieved party for damages caused by such interference. *The association is also entitled to an injunction to prevent any interference or further interference with the contract.*

90 Wis. 2d at 789 (emphasis added). The same distinction can be made for an earlier version of that statute:

> Where any contract exists between an association and a member, any person who, with knowledge or notice of the existence of the contract, induces or attempts to induce or aids in the breach thereof by any means, *shall be liable to the aggrieved party for damages* on account of such interference with said contract and *shall also be subject to an injunction to prevent the interference or further interference therewith.*

*Neillsville Shipping Ass'n. v. Lastofka*, 225 Wis. 350, 353–54, 274 N.W.2d 280 (1937) (quoting Wis. Stat.

§ 185.08(6)(1937))(emphasis added). The *Neillsville* court read the statute as denying the circuit court's equitable power to refuse an injunction. *See* 225 Wis. at 354. Essentially, proof of the statutory violation mandated liability for damages and injunctive relief. The *Neillsville* court did not engage in any discussion of legislative intent to eliminate a court's traditional equitable powers, but apparently relied on a plain language analysis.

¶ 40. Similarly, the *Pure Milk* court did not discuss legislative intent. Instead that court relied on the plain language of the statute before it, "is entitled," and on the conclusion of the *Neillsville* court that a trial court had no discretion under such a statute. *See Pure Milk*, 90 Wis. 2d at 789–90.[11]

¶ 41. The State points to two other decisions, where, it asserts, the circuit court's equitable powers have been limited by statute. According to the State's brief, this court concluded that "[s]tatutory compliance

_____

[11] All three parties in this case raise a separation of powers question. The State and County contend that if we read Wis. Stat. § 59.69(11) not to restrict the traditional equitable power of the circuit court, those courts can usurp the legislative intent behind the zoning variance procedures. Conversely, Goode argues that if we read the enforcement statute to eliminate the circuit court's traditional equitable power, we will be permitting the legislature to infringe on powers traditionally reserved to the judiciary. Although the enforcement statute at issue in *Pure Milk Prod. Coop. v. National Farmers Organ.*, 90 Wis. 2d 781, 280 N.W.2d 691 (1979), expressly limited the circuit court's equitable power, none of the parties in that case raised a separation of powers question. We need not take up a separation of powers analysis here, because we read the statute to reflect a legislative intent that the circuit court continue to exercise its traditional equitable power in deciding, once a zoning ordinance violation is proven, whether to grant injunctive relief.

is required, and discretion is available to the court not to permit continuing violations, but only to fashion relief to the parties injured as a result of the statutory violations." State's brief at 35, citing *State v. Excel Management Services*, 111 Wis. 2d 479, 490, 331 N.W.2d 312 (1983). We do not read our opinion in *Excel Management* to find a statutory erasure of the traditional equitable power of the court.

¶ 42. We recognized that the consumer protection statute at issue in *Excel Management* gave the circuit court broad authorization to grant relief, including injunctive relief. *See* 111 Wis. 2d at 498. We then endorsed the United State Supreme Court's description of equitable jurisdiction:

> the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.

*Excel Management*, 111 Wis. 2d at 490 (citing *Porter v. Warner Co.*, 328 U.S. 395, 398 (1946)). More to the point, we stated in *Excel Management* that "[b]ecause the statutes here involved contain no limitation on the trial court's exercise of its equity jurisdiction, we conclude that the trial court has the full scope of equitable remedies available to it to fashion relief for the parties injured as the result of the acts and practices involved in this action." *Id.* at 490. We decline to read *Excel Management* as supporting a conclusion that the circuit court's equitable power has been eliminated.

¶ 43. The State also derives a rule from *State v. Fonk's Mobile Home Park & Sales, Inc.*, 117 Wis. 2d 94,

343 N.W.2d 820 (Ct. App. 1983) that in certain instances, once a statutory violation has been proved, the circuit court must issue an injunction and common law equitable principles do not apply. *Fonk* is not that restrictive. The court of appeals held in that case that the statutory injunction could be granted if the plaintiff only proved a past violation of an unfair trade practices statute. Proving the elements of the statutory violation meant that one of the common law requirements for injunctive relief, the threat of future harm, need not be established. *See id.* at 101. The *Fonk* decision never discussed a restriction on the circuit court's equitable power to deny an injunction once the petitioner has met his or her burden of proof.[12]

## PUBLIC POLICY

¶ 44. As part of our effort to discern the legislative intent relating to the circuit court's equitable power under this statute, we look to the object or purpose of the statute. "The purpose of state shoreland zoning standards is to 'further the maintenance of safe and healthful conditions; prevent and control water pollution; protect spawning grounds, fish and aquatic

---

[12] The unfair trade practices statute invoked in *State v. Fonk's Mobile Home Park & Sales, Inc.,* 117 Wis. 2d 94, 343 N.W.2d 820 (Ct. App. 1983), provided:

> The department may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction the violation of any order issued under this section. The court may in its discretion, prior to entry of final judgment make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court.

Wis. Stat. § 100.20(6).

life; control building sites, placement of structure and land uses and reserve shore cover and natural beauty.' " *Kenosha County*, 218 Wis. 2d at 406. "The basic purpose of a shoreland zoning ordinance 'is to protect navigable waters and the public rights therein from the degradation and deterioration which results from uncontrolled use and development of shorelands.' " *Id.* at 406, quoting *Just v. Marinette County*, 56 Wis. 2d 7, 10 201 N.W.2d 761 (1972).

¶ 45. Both parties agree that an absurd or unreasonable result must be avoided. *See Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 162, 558 N.W.2d 100 (1997). The County argues that to allow a single property owner to enforce a zoning provision through mandatory injunctive relief is nothing more than providing a remedy co-existent with the citizen's right to expect compliance with zoning ordinances. The State argues that allowing the judiciary to nullify a statutory variance process is absurd and unreasonable. The State contends that because the public has an important interest in shoreland zoning, it would be unreasonable to conclude that the legislature intended the circuit court to retain equitable power to deny, in its discretion, injunctive relief in the case of zoning ordinance violations.

¶ 46. Goode contends that the court of appeals decision would lead to absurd or unreasonable results, but for a different reason. Goode argues that because a single property owner may institute enforcement proceedings under § 59.69(11), this single property owner could also require that an offending structure be moved no matter what the equities involved.

¶ 47. We note that "self-help through the use of injunctions by private litigants has become an impor-

tant element of zoning enforcement."[13] Even so, we conclude that to construe the enforcement statute as eliminating the circuit court's traditional equitable power could lead to unjust results. For instance, a resident of the district affected by the zoning regulation could request, and necessarily obtain, an injunction compelling conformance with the ordinance. This is so even if the violation was extremely minor and the issuance of an injunction would be inequitable.

¶ 48. In one case of private enforcement, plaintiff neighbors of a cement plant waited over three years after the plant operator had received a permit to build his plant before commencing their zoning ordinance enforcement action. *See Diehl v. Dunn*, 13 Wis. 2d 280, 108 N.W.2d 509 (1961). If the *Diehl* trial court had lacked equitable power, the defendant would have had to dismantle his entire plant with no consideration of the equities. Instead, this court upheld the trial court's denial of an injunction, stating, "Injunction is an equitable remedy, and a court in accordance with ancient

---

[13] Kenneth H. Young, *Anderson's American Law of Zoning*, § 29.01, 683 (4th ed. 1997). Young comments on the evolution of zoning enforcement:

> While zoning regulations, like other regulations enacted pursuant to the police power, are enacted with the expectation that the burden of enforcement will rest with the municipality, the enabling acts of a substantial number of states authorize a taxpayer or other private person to institute an action to enjoin a violation of the zoning regulations. Provisions of this kind recognize not only the fact that landowners have a singular stake in the enforcement of land-use controls, but that the likelihood of vigorous enforcement is not always great. It is common knowledge that when zoning is commenced in many communities no adequate provision is made for enforcement. Frequently, enforcement is committed to a building inspector who is already understaffed for the task of enforcing the building code. When zoning enforcement is committed to his office he is unable to give it more than desultory attention.

doctrines and established decisions will lend its aid only to the vigilant, active, and faithful." 13 Wis. 2d at 286.

¶ 49. The State asserts that the public interests at stake in zoning obviate equitable considerations that might lead to a denial of injunctive relief. The State cites *Bouchard v. Zetley*, 196 Wis. 635, 647, 220 N.W. 229 (1928), as an instance where the court rejected the defendants' suggestion that money damages would have been adequate, instead of the harsh injunctive relief imposed. In disagreeing with the defendants' proposal, the court stated: "The public is interested in the enforcement of the zoning ordinances, as well as the owners of property specially affected. Such public rights should not be compromised by private parties." *Id.*

¶ 50. Our decision today in no way endorses the "purchase" of variances. We only reaffirm the *Bouchard* court's statement about the nature of zoning ordinance enforcement proceedings. "Under the circumstances we think the court, sitting in equity, exercised a wise discretion." *Id.* at 646. We conclude that the circuit court's equitable power to use that discretion has not been eliminated.

¶ 51. Contrary to the State's prediction, our conclusion will not result in dire consequences for zoning enforcement actions. Nor will it frustrate the purpose of shoreland zoning in particular.

¶ 52. "[P]revention rather than punishment is the keynote of most zoning administration." Kenneth H. Young, *Anderson's American Law of Zoning*, § 29.01 (4th ed. 1997). When a circuit court exercises its equitable discretionary power, there are checks in place to oversee the proper use of that discretion. The erroneous exercise of discretion standard is available for

appellate court review. *Mercury Records Productions, Inc. v. Economic Consultants, Inc.*, 91 Wis. 2d 482, 500, 283 N.W.2d 613 (1979). In addition, the amount of the potential forfeiture awarded under the local ordinance, and the potential for jail time if the forfeiture is not paid, may deter zoning ordinance violations in the first place, or may serve at a later point to force the property owner to bring the property into compliance. Additional preventive measures exist in many counties to ensure that shoreland is protected, including the grant or denial of building permits and licenses, and the approval or disapproval of development plans.

¶ 53. Allowing the circuit court to balance the equities when an injunction is requested under Wis. Stat. § 59.69(11) will not render "meaningless the entire line of case law regarding the standard of unnecessary hardship which must be met in order for a variance applicant to be properly granted a variance." State's brief at 7. Instead, the circuit court, sitting in equity, should weigh heavily the factors considered by boards of adjustment in determining unnecessary hardship, *see* Wis. Stat. § 59.694(7)(c), as well as traditional equitable considerations.[14] Equitable defenses,

---

[14] One treatise has collected cases demonstrating the trial court's exercise of equitable discretion in deciding whether, and in what form, to grant injunctive relief for zoning ordinance violations:

A decree compelling the removal of an offending building will not be issued where the building (1) can be put to a conforming use; (2) where the violations are insignificant; (3) where the violation has resulted from an erroneous but reasonable interpretation of the ordinance, and the plaintiff who is seeking the mandatory injunction could have appealed from the issuance of the permit pursuant to which the building was erected, but failed to do so; and (4) where the entire circumstances, viewed together, present compelling reasons why equity should refuse plaintiff's request for an injunction.'

such as laches, estoppel,[15] or unclean hands[16] should also be weighed in appropriate cases. *See, e.g., Ramaker v. Cities Service Oil Co.*, 27 Wis. 2d 143, 153, 133 N.W.2d 789 (1965) (recognizing that there may be situations where laches or estoppel would justify a court of equity in denying an injunction at the suit of private parties). *See, also, Hargreaves v. Skrbina*, 662 P.2d 1078, 1080 (Colo. 1983) (upholding trial court's consideration of equitable principle of relative hardships in setback violation case, where encroachment was done in good faith pursuant to a permit, and compliance would cost $150,000 with little corresponding benefit to the plaintiff or the public); *Grand Haven Township v. Brummel*, 274 N.W.2d 814, 816–17 (Mich. Ct. App. 1978) (finding an erroneous exercise of discretion in ordering relocation of homes where property owner received building permits, spent $100,000 and acted in good faith throughout the transaction); and other cases cited in *Anderson's American Law of Zoning*, § 29.03–.16.

¶ 54. We agree with the County that where a public entity is authorized to seek a statutory injunc-

4 Ziegler, *Rathkopf's The Law of Zoning and Planning*, § 45.02, 45–22 (4th ed.) (citations and footnotes omitted).

[15] Our conclusion that traditional equitable considerations should be balanced by the circuit court recognizes our decision in *Jelinski v. Eggers*, 34 Wis. 2d 85, 93, 148 N.W.2d 750 (1967), where we concluded that a building permit granted no vested right to an unlawful use, and therefore defendant's assertion of estoppel was unsuccessful to avoid compliance.

[16] It appears that the city's knowledge of the need for a permit prior to construction of a concrete channel contrary to DNR regulations, was a factor in the court of appeals' determination not to include costs of removal in the equitable balancing analysis. *See City of Oak Creek v. DNR*, 185 Wis. 2d 424, 451, 518 N.W.2d 276 (Ct. App. 1994).

tion enforcing a zoning ordinance, under *Bylewski* the plaintiff does not have to show irreparable injury in order to obtain the injunction. *Bylewski*, 94 Wis. 2d at 163–64. A circuit court is one guardian of the protected shoreland, and should not deny injunctive relief lightly when a zoning ordinance violation is proven. That judicial responsibility, however, does not foreclose the use of equitable power to determine, based on the particular facts before the court, whether, and in what form, to grant injunctive relief.

¶ 55. We conclude that Wis. Stat. § 59.69(11), the zoning ordinance enforcement statute, does not eliminate the traditional equitable power of circuit court. Therefore it was within the power of the circuit court to deny the County's request for injunctive relief.

¶ 56. The County and the State then assert that the circuit court erroneously exercised its discretion by denying an injunction. We agree that in this case, the circuit court failed to consider and sufficiently weigh all the proper factors prior to entry of its order. In announcing its decision, the circuit court explained that although the County possessed an interest in having compliance with the ordinance, no property owner in the area had come forward to complain, Mr. Goode had acted in good faith, and based upon its own experience, the court believed it would be expensive to put the house into compliance. We conclude that the court did not take sufficient evidence before reaching its decision and did not adequately address the interest of the public at large in obtaining full compliance with the ordinance. The court never explored the possibility of a more limited injunction which might have been less cumbersome for Mr. Goode, but yet would have adequately protected the public interest.

¶ 57. In deciding whether to deny a request for an injunction based upon a shoreland zoning ordinance violation, the circuit court should take evidence and weigh any applicable equitable considerations including the substantial interest of the citizens of Wisconsin in the vigilant protection of the state's shorelands, the extent of the violation, the good faith of other parties, any available equitable defenses such as laches, estoppel or unclean hands, the degree of hardship compliance will create, and the role, if any, the government played in contributing to the violation. This list is not meant to be exhaustive but only to illustrate the importance of the circuit court's consideration of the substantial public interest in enforcing its shoreland zoning ordinances.

¶ 58. Once a violation is established, a circuit court should grant the injunction except, in those rare cases, when it concludes, after examining the totality of the circumstances, there are compelling equitable reasons why the court should deny the request for an injunction. As the State pointed out at oral argument, the circuit court also possesses equitable power to fashion an injunction that does justice. If the court is inclined to deny an injunction, it should first explore alternatives to the requested full injunction to determine whether a more equitably crafted injunction might be appropriate.

¶ 59. We conclude that the circuit court erroneously failed to take sufficient evidence in this case and failed to sufficiently weigh the equitable considerations we have described. We therefore affirm the decision of the court of appeals reversing the order of the circuit court and remanding for a new hearing consistent with this opinion.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 60. ANN WALSH BRADLEY, J. (*concurring*). I agree with the majority's discussion determining that Wis. Stat. § 59.69(11) does not eliminate the traditional equitable powers of the circuit courts. However, I write separately to caution those same circuit courts to consider in the exercise of their power the very real prospect that by merely anteing up the amount of a fine imposed, individual landowners may, by circumstance or design, effectively "purchase" a variance for their nonconforming lakefront homes. In such instances, the general welfare of the public is derogated in favor of the individual homeowner and zoning boards are left powerless to fulfill their charge to protect Wisconsin's environment and the public welfare.

¶ 61. A court must consider in the exercise of its equitable powers not only the rights of individual landowners, but the rights of the public. I echo the concern voiced by the majority opinion in the court of appeals that "courts, under the mantle of balancing the equities, can permit defendants to violate statutes with [relative] impunity. One should not be permitted at the trial court's discretion to purchase through forfeitures a variance from a zoning code." *See Forest County v. Goode*, 215 Wis. 2d 217, 228–29, 572 N.W.2d 131 (Ct. App. 1997).